COMMONWEALTH vs. ARCANGEL MORALES.

Essex. October 1, 2012. - February 7, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Homicide. Self-Defense. Evidence,* Self-defense, Prior violent conduct, Reputa-
tion, Relevancy and materiality. *Practice, Criminal,* Instructions to jury.
*Notice.*

This court concluded that, where a criminal defendant raising a claim of self-
defense seeks to introduce evidence of prior violent acts by the alleged
victim on the issue of the identity of the first aggressor, the Commonwealth
may seek to present evidence of prior violent acts of the defendant for the
same purpose, provided the defendant is given sufficient advance notice of
the Commonwealth's intent to introduce such evidence; the trial judge
determines that introduction of the evidence is more probative of its intended
purpose than prejudicial to the defendant; and the trial judge instructs the
jury specifically on the proper and limited use of such evidence, both
contemporaneously with the introduction of the evidence and at the end of
the case [307-312]; further, here, the trial judge's error in instructing the
jury in the final charge conference, without the defendant having received
timely notice before the start of trial, that they could consider evidence
concerning a prior violent act of the defendant to determine who was the
first aggressor in a fight was not prejudicial in the circumstances [312-314].

INDICTMENT found and returned in the Superior Court Depart-
ment on November 20, 2002.

The case was tried before *Howard J. Whitehead,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Richard B. Klibaner* for the defendant.

*Catherine Langevin Semel,* Assistant District Attorney, for the
Commonwealth.

BOTSFORD, J. The defendant, Arcangel Morales, appeals from
his conviction of manslaughter. The principal question before us
concerns the rule adopted by this court in *Commonwealth* v.
*Adjutant,* 443 Mass. 649 (2005) (*Adjutant*). The question is this:
during a trial where the defendant raises a claim of self-defense

and, pursuant to *Adjutant*, has been permitted to introduce evidence of the victim's prior violent acts on the issue of the identity of the first aggressor, may the Commonwealth introduce evidence of the defendant's prior violent acts on that same issue — to be followed by an instruction that the jury may consider the evidence of both parties' violent acts on the findings of who was the first aggressor? We answer the question "Yes," provided that the Commonwealth gives the defendant notice appropriately in advance of its intent to introduce such evidence and the trial judge determines that introduction of such evidence is more probative of its intended purpose than prejudicial to the defendant.

1. *Background.* a. *Prior proceedings.* On September 26, 2002, the defendant was involved in a confrontation that culminated in his stabbing Michael Carey, the victim, with a knife and inflicting wounds from which the victim died. Thereafter, the defendant was indicted on a charge of murder in the first degree and a separate charge of assault and battery by means of a dangerous weapon against Leola Thomas; this second charge related to an incident that had occurred on September 22, 2002. The defendant was tried in the Superior Court in the spring of 2004. The jury convicted him of murder in the second degree and found him not guilty of the assault and battery charge. The defendant appealed, and the Appeals Court reversed because of an error in jury instructions and remanded the case to the Superior Court for a new trial. *Commonwealth* v. *Morales*, 70 Mass. App. Ct. 526, 533-534 (2007). The defendant was retried in October, 2008, and was convicted of the lesser included offense of manslaughter. We transferred the defendant's appeal to this court on our own motion and affirm the conviction.

b. *Facts.* The jury could have found the following facts at the second trial. At around 4 P.M. on September 26, 2002, the victim finished work and ate dinner with Robert Luiz, Mark Avellino, Bonnie Maguire, and Leola Thomas[1] at a shelter in Lynn where they all resided intermittently. The group purchased a bottle of

---

[1]Leola Thomas was the person with whom the defendant had had an altercation on September 22, 2002, and was the alleged victim of the assault and battery by means of a dangerous weapon charge of which the defendant was acquitted at his first trial. Evidence concerning the altercation was presented at the defendant's second trial, as described in the following paragraph of the text.

liquor at a nearby store and set out to drink it behind a building, a location they often selected in order to remain out of public view. As they rounded the corner of the building, Thomas observed the defendant, whom she as well as Luiz and Avellino recognized, standing with another man, Richard Valentine, and drinking a can of beer. On observing the defendant, Thomas immediately became hysterical and yelled to her group that the defendant was the person responsible for her previous injuries. In response, the victim approached the defendant and asked, "How could you do that to a woman?" Within a few seconds, the victim and the defendant engaged in an altercation that ended with the defendant's stabbing the victim three times.[2] The defendant fled the scene.

Four days before this episode, on September 22, 2002, the defendant and Thomas had been involved in a physical confrontation outside a gasoline station near the shelter, and it had ended with the defendant hitting Thomas over the head with a beer bottle (bottle incident).[3] Thomas suffered serious injuries to her right temple and chin and required immediate medical attention. According to the defendant,[4] he encountered Thomas on three

---

[2]With respect to the details of the altercation, Avellino and Luiz each testified that the victim approached the defendant and kept his "hands up" during the confrontation and then each saw the defendant stab the victim with a knife. Thomas testified that she observed the victim "going after" the defendant and, subsequently, the victim's "hands in motion" when the two were fighting; she did not see anything else. The defendant stated in his interview with police that the victim swung his fists at least once but that none of the victim's punches made contact; he admitted to having stabbed the victim. The other witnesses, Maguire and Valentine, did not see the fight begin, and Valentine further testified that he did not see the victim or the defendant brandish a weapon.

[3]The reason for the defendant's assault of Thomas with the bottle (bottle incident) is unclear. At the defendant's first trial in 2004, Thomas testified that she had no recollection of the exchange between her and the defendant preceding the bottle incident. The defendant admitted to striking Thomas in the head with the bottle in his statement to police on his arrest in 2002, but claimed he only did so after Thomas attempted to hit the defendant.

Thomas died prior to the second trial but her testimony from the first trial was read into evidence in its entirety.

[4]The defendant's account of the events of both September 26 and September 22 came from his postarrest statement to the police. The statement was recorded and transcribed, and the jury both heard the recording and received a copy of the transcript as a trial exhibit. The defendant did not testify at either trial.

separate occasions between the September 22 bottle incident and September 26, and each time, Thomas and the people accompanying her had acted in a threatening and aggressive manner. The defendant had walked away from Thomas and her then companions on each of these previous encounters, but on September 26, he did not. He explained in substance that the pressure was too great, and he thought that the group, goaded to action by Thomas, was going to kill him.

c. *Introduction of prior violent acts.* The *Adjutant* case was decided in March of 2005, after the defendant's first trial but before his second. Pursuant to *Adjutant*, 443 Mass. at 665-666, the defendant filed a motion in limine before the second trial, seeking to admit evidence of the victim's arrest for a domestic disturbance and subsequent convictions of assault and battery and threatening to commit a crime; the date of the convictions was March of 2000, approximately two and one-half years before the September 26, 2002, encounter leading to the victim's death and ensuing murder charge against the defendant. The trial judge reserved ruling on the motion in limine until trial. During his opening statement, defense counsel stated that the evidence would show that the defendant had acted in self-defense, and that after the defendant's encounter with Thomas on September 22, Thomas and her friends on several occasions had threatened to retaliate against the defendant, causing him to fear for his life. Thereafter, as part of its case-in-chief, the Commonwealth introduced evidence describing the September 22 bottle incident between the defendant and Thomas — and specifically that the defendant had hit Thomas over the head with a bottle, causing injury — to explain the sequence of events leading to the altercation between the defendant and the victim four days later, namely, that the victim approached the defendant at that time to confront him about his earlier fight with Thomas. The defendant did not object to any of this evidence, and it was admitted without limitation.

During the defendant's case, the judge, referring to the *Adjutant* case, permitted the defendant to introduce evidence of the victim's arrest for domestic assault and battery and March, 2000, convictions of assault and battery and threatening to commit a crime, as it related to the issue of the first aggressor in the

September 26, 2002, confrontation.[5] Thereafter, during his charge conference with defense counsel and the prosecutor, in a reference to the *Adjutant* case, the judge mentioned the prior violent acts of the victim and questioned whether the jury should be permitted to "consider prior acts of violence on the part of the defendant as well on the issue of who was first aggressor." The judge expressed his views that he thought they should, that this was a "logical extension of *Adjutant*," and that he ought so to instruct the jury. Defense counsel objected to the judge instructing the jury in this manner because it was not then the current state of the law and would "cast aspersions at the defendant's prior bad act."[6]

In his final instructions, the judge told the jury that "to the extent that you've heard evidence of prior acts of violence on the part of [the victim], on the one hand, or the defendant . . . , on the other hand, you may consider such acts of violence in determining who might have been the first aggressor in this incident involving each of them." The judge gave this instruction in relation to the issue of self-defense, the mitigating factor of use of excessive force in self-defense, and the mitigating factors of heat of passion based on reasonable provocation and heat of passion based on sudden combat.[7] The defendant objected. Thereafter, in response to the jury's request for additional guidance on mitigating factors related to murder in the second degree and over the renewed objection of defense counsel, the judge reinstructed the jury on heat of passion based on reasonable provocation and sudden combat and use of excessive force in

---

[5]The judge determined that it was "a very close case" whether to admit the victim's prior conviction of assault and battery; he expressed his belief that a prior conviction alone, even where the charged offense is assault and battery, without further specific evidence of a propensity to attack, is not sufficient for the admission of prior violent acts of the victim. Nevertheless, the judge reasoned that admission of the proffered evidence was appropriate in the present case where the jury had heard evidence of the defendant "whacking the female witness [Thomas] over the head with a bottle."

[6]Defense counsel also specifically asked the judge not to instruct the jury on the use of the defendant's involvement in the September 22 attack on Thomas because it was his strategy to limit the attention placed on this event.

[7]In presenting his charge to the jury, the judge initially omitted the instruction based on *Commonwealth* v. *Adjutant*, 443 Mass. 649 (2005) (*Adjutant*), in connection with self-defense and use of excessive force in self-defense, but then corrected himself.

self-defense, and read again his instruction permitting the jury to consider the violent acts of both the victim and the defendant in considering who might have been the first aggressor.

2. *Discussion.* a. *The* Adjutant *principle.* In *Adjutant*, following the lead of Federal and nearly all State courts, this court concluded that "evidence of a victim's prior violent conduct may be probative of whether the victim was the first aggressor where a claim of self-defense has been asserted and the identity of the first aggressor is in dispute." *Adjutant*, 443 Mass. at 650. Accordingly, we held that in such cases "the trial judge has the discretion to admit evidence of specific acts of prior violent conduct that the victim is reasonably alleged to have initiated."[8] *Id.* at 664.

We recognized in *Adjutant* that such evidence was propensity or character evidence that would be admitted expressly "for the purpose of showing that the victim acted in conformance with his character for violence," *id.* at 654, and that there was a risk both of prejudice and of misunderstanding on the jury's part as to the purpose of its admission, *id.* at 663-664. However, we noted that a trial judge had discretion to exclude highly prejudicial evidence, and juries could, and should, be instructed specifically on the limited purpose of such evidence. *Id.* We thought there was a greater danger that the exclusion of the evidence concerning the victim's violent acts could prejudice the defendant because the evidence might offer the only way for a jury to assess the validity or likelihood of the defendant's account of what happened. See *id.* at 650 n.1, 659-660. And we were persuaded, see *id.* at 658-659, that where, as often occurs when self-defense is at issue, there is confusing and conflicting evidence of what actually happened and a dispute about the identity of the first aggressor, the jury would be better informed if "evidence tending to show the victim's violent character should be admissible for the limited purpose of supporting the defendant's self-defense claim that the victim was the first aggressor." *Id.* at 660.

---

[8]This court further explained in *Adjutant*, 443 Mass. at 665, that only specific acts and not character evidence introduced by means of reputation or opinion testimony may be properly admitted on the issue of determining the first aggressor.

We declined to decide in *Adjutant* whether, where the defendant is permitted to introduce evidence of prior violent acts by the victim on the first aggressor issue, the Commonwealth in turn may introduce evidence of prior violent conduct by the defendant for the same purpose — that is, to help identify the first aggressor. See *id.* at 666 n.19. This question is necessarily a part of the defendant's claim in the present appeal, and therefore we address it.

The defendant argues that the admission of evidence of his prior violent acts and, more specifically, the judge's instruction to the jury on their ability to consider such evidence on the identity of the first aggressor were error because *Adjutant* itself did not authorize such a course of action and, more significantly, there is no justification for requiring equal or balanced treatment of the defendant and the victim. The defendant stresses that it is the defendant, not the victim, who is on trial, and it is the defendant who faces a real risk of being convicted on the basis of his prior bad acts rather than on a reasoned assessment of what actually happened in his fight with the victim. See *Adjutant*, 443 Mass. at 672 (Cowin, J., dissenting). The defendant argues that to avoid the potential for juror misuse, this court should follow the lead of those other courts that have prohibited the government from introducing evidence of the defendant's character or reputation for violence.[9] In response, the Commonwealth argues that it is more appropriate to follow the example set by the many jurisdictions that explicitly have permitted the prosecution to introduce evidence of the defendant's

---

[9]The defendant cites several cases where evidence of a defendant's reputation for violence or violent character was prohibited even though evidence had been introduced concerning the victim's violent reputation or character. See *Stearns* v. *State*, 266 Ala. 295, 296-297 (1957); *Keith* v. *State*, 612 P.2d 977, 984-986 (Alaska 1980); *Johns* v. *United States*, 434 A.2d 463, 469-471 (D.C. 1981); *Roberson* v. *State*, 91 Okla. Crim. 217, 227-228 (1950). We note that the holding of one of these cases, *Keith* v. *State*, *supra*, subsequently was superseded by legislation. See *Allen* v. *State*, 945 P.2d 1233, 1235-1236 (Alaska Ct. App. 1997) (citing and discussing change in rule of evidence adopted by Legislature). At the present time, as the Commonwealth points out, many States, like Alaska, have adopted evidentiary rules that follow the approach taken by the Federal Rules of Evidence in Fed. R. Evid. 404(a), and allow introduction of evidence of a defendant's reputation for violence where the defendant has introduced evidence of the victim's violent reputation. See notes 10 and 12, *infra*.

violent character to fill out and balance the evidence properly before the jury when the identity of the first aggressor is at issue.[10] We agree with the Commonwealth.[11] If, as we concluded in *Adjutant*, evidence in the form of specific prior acts of violence by the victim will assist a jury in determining who was the first aggressor in a confrontation giving rise to a claim of self-defense, it follows that evidence of specific prior violent acts committed by the defendant will do the same.[12] More specifically, if evidence of past violent acts is relevant to the issue of identity of the first aggressor because it is more probable that an individual with a propensity for violence would initiate the violence in the present case, there is no logical basis on which to distinguish between

[10]See, e.g., *State* v. *Robinson*, 344 Mo. 1094, 1097 (1939) (permissible for State to introduce defendant's reputation for violence and turbulence where defendant elicited testimony of same as to victim). Accord *State* v. *Hill*, 614 S.W.2d 744, 752 (Mo. Ct. App. 1981). See also *People* v. *Blanco*, 10 Cal. App. 4th 1167, 1173 (1992) (upholding constitutionality of California statute permitting introduction of defendant's violent character in form of opinion, reputation, or specific instances of conduct where similar evidence concerning victim has been admitted). Cf. *Matter of Robert S.*, 52 N.Y.2d 1046, 1047-1048 (1981) (upholding exclusion of testimony relative to victim's general propensities for violence but permitting general reputation evidence as to same). In addition to these court decisions, many States have adopted evidentiary rules permitting the introduction of evidence concerning a defendant's violent character when this type of evidence concerning a victim has been introduced on the issue of first aggressor. See Cal. Evid. Code 1103(b) (1991); Colo. R. Evid. 404(a)(1) (2007); Mich. R. Evid. 404(a)(2) (2001); N.D. R. Evid. 404(a)(1) (2008); Pa. R. Evid. 404(a)(1) (2006); Tenn. R. Evid. 404(a)(1) (2009); Utah R. Evid. 404(a)(2) (2011); Vt. R. Evid. 404(a)(1) (2011).

[11]We do so for the reasons discussed immediately below in the text. We recognize, however, that the cases cited by the Commonwealth in support of its argument primarily rely on reputation evidence rather than specific act evidence. See note 10, *supra*.

[12]The Federal Rules of Evidence have adopted this approach. Rule 404(a)(2)(B) carves out an exception to the general prohibition of the use of character evidence in Rule 404(a)(1) by allowing a defendant to offer evidence of a victim's pertinent trait, e.g., violence, and where the defendant so offers, rule 404(a)(2)(B)(ii) affords prosecutors the reciprocal right to introduce evidence of the same as to the defendant. See Advisory Committee's Note to Fed. R. Evid. 404(a)(1), 192 F.R.D. 414, 415 (2000) (precursor to the current form of, and substantively the same as, rule 404[a][2][B][ii]). The rationale for admitting otherwise inadmissible character evidence relating to the defendant is that, as especially is true in the context of self-defense, the jury only has part of the information needed to make an informed determination as to who was the initial aggressor of the conflict. Advisory Committee's Notes to rule 404(a) (2000).

the victim and the defendant; evidence of prior violent acts by both are equally relevant. Accordingly, as a general rule, where the judge has determined that the jury may hear evidence of violent acts on the part of the victim to assist in their assessment of who initiated the fight or confrontation at issue in the case, the jury also should be able to hear evidence (if it exists) of specific violent acts of the defendant. This approach serves the goal of providing the jury with "as complete a picture of the (often fatal) altercation as possible before deciding on the defendant's guilt." *Adjutant, supra* at 658-659, citing *People* v. *Lynch,* 104 Ill. 2d 194, 200 (1984).

We acknowledge that the risk of jury prejudice against a defendant in this context is a real one, and is greater than the risk of prejudice against a victim with a violent past. As the defendant has emphasized, he is the one being tried for committing a crime, not the victim. Moreover, by definition, a case giving rise to a claim of self-defense is one that involves a violent episode in which the defendant was involved. Introducing evidence of specific violent acts previously committed by that defendant obviously poses a danger that such evidence will be used by the jury as direct proof of his guilt in the present case. See *Adjutant, supra* at 660 n.14 (recognizing "acute" potential for prejudice to criminal defendant arising from evidence of bad character and need for safeguards "to ensure that the jury do not convict a defendant for his past malevolence or for conduct unrelated to the crime with which he has been charged").[13]

For this reason, it is imperative that in a case where the Commonwealth seeks to introduce evidence of specific prior acts of violence by the defendant in response to the defendant's proffer

---

[13]Outside the narrow framework of self-defense and the issue of first aggressor that *Adjutant* posits, Massachusetts courts have emphasized that evidence of a defendant's character is only admissible to show "a common scheme, pattern of operation, absence of accident or mistake, identity, intent or motive" and is not admissible as evidence that the defendant committed the charged offense. See, e.g., *Commonwealth* v. *Sharpe,* 454 Mass. 135, 143 (2009), quoting *Commonwealth* v. *Helfant,* 398 Mass. 214, 224 (1986); *Commonwealth* v. *Mullane,* 445 Mass. 702, 708-709 (2006) (evidence of person's character not admissible to prove that person acted in conformity therewith); *Commonwealth* v. *Baker,* 440 Mass. 519, 529-530 (2003) (same); Mass. G. Evid. § 404(a) note, at 39 (2012).

of evidence concerning the victim's violent acts, the trial judge weigh very carefully the probative value of the proffered evidence against its potential for prejudice to the defendant. See Mass. G. Evid. § 403 & note, at 36 (2012). See also *Adjutant, supra* at 663-664 (citing cases in which courts weighed prejudice against probative value in relation to victims). In addition, if evidence of the defendant's prior violent acts is admitted, the trial judge must instruct the jury specifically on the proper and limited use of such evidence, both contemporaneously with the introduction of the evidence and at the end of the case.[14] Cf. *Commonwealth* v. *King,* 445 Mass. 217, 248 (2005), cert. denied, 546 U.S. 1216 (2006) (instruction on first complaint testimony is to be given to jury contemporaneously with such testimony and in final charge).

Finally, it is essential that in a case where the defendant intends to introduce evidence of prior violent acts by the victim on the first aggressor issue, the prosecution provide the defendant with notice well before the trial begins of its intent to offer in rebuttal similar evidence relating to the defendant and a specific description of the particular evidence at issue.[15] Only with such notice, followed by a ruling by the judge concerning

---

[14]This court has recognized the importance of a jury instruction "delineating the precise purpose for which the evidence is offered" with respect to evidence of a victim's prior violent conduct. *Adjutant,* 443 Mass. at 664. For the reasons discussed, such a limiting instruction is equally if not more critical when evidence has been presented concerning the defendant's prior violent acts. Although *Adjutant* did not discuss when such a jury instruction should be provided, as indicated in the text, we now state that with respect to evidence of prior specific acts of violence by the victim and the defendant, the limiting instruction should be given both during trial, when the evidence is admitted, and during the judge's final charge.

[15]Rule 14 (b) (4) of the Massachusetts Rules of Criminal Procedure, as amended, 463 Mass. 1504 (2012), currently addresses these points. Under the rule, a defendant intending to introduce evidence of the alleged victim's specific acts of violence on the issue of first aggressor must provide written notice to the Commonwealth within twenty-one days after the pretrial hearing, and the notice must provide details concerning the specific acts that he intends to use. Mass. R. Crim. P. 14 (b) (4) (A). The rule goes on to provide that the Commonwealth, within thirty days of receipt of the defendant's notice, must serve written notice on the defendant "of any rebuttal evidence the Commonwealth intends to introduce" and a brief description of that evidence, with details. Mass. R. Crim. P. 14 (b) (4) (B). The current version of rule 14 (b) (4) was not in effect at the time of the defendant's trial, but in any event, it is important to recognize that the rule is a discovery rule, providing for notice;

the admissibility of such evidence,[16] can a defendant be in a position to make an informed decision whether to press forward with the *Adjutant* evidence concerning the alleged victim or instead change course to avoid the introduction of evidence concerning his own prior conduct.[17]

b. *The* Adjutant *principle and this case.* The defendant argues that the judge's *Adjutant* instruction, insofar as it told the jury that they were entitled to consider prior violent acts of the defendant in deciding who was the first aggressor, was error requiring reversal, because *Adjutant* did not authorize this course of action and should not be expanded to do so. For the reasons we have just discussed, we disagree with the defendant's argument and do not discern any error in the actual *Adjutant* instruction the judge gave.[18]

The defendant, however, raises a further argument that has merit. His claim in substance is that even if *Adjutant* is extended to cover specific prior acts of violence on the part of the defendant, there was error in this case because he was not provided any notice until the final charge conference that the jury would be instructed that they could consider evidence concerning the defendant's conduct in the September 22 bottle incident to determine who was the first aggressor in the fight occurring on September 26. We agree that in the absence of timely notice to

nothing in the rule itself authorizes the admission of any evidence proffered by the defendant or the Commonwealth. The determination whether to admit evidence concerning prior acts of violence of the alleged victim and the defendant — and, if so, what evidence to admit — is a matter left to the discretion of the trial or motion judge. See *Adjutant,* 443 Mass. at 663-664, 665-666.

[16]In deciding whether to admit evidence concerning prior acts of violence by the victim and more particularly by the defendant when the identity of the first aggressor is disputed, the judge must carefully examine the particular circumstances of the case, and weigh the probative value of such evidence against its prejudicial effect. See *Adjutant, supra* at 663-664; Mass. G. Evid. § 403 & note, at 36 (2012).

[17]If a defendant does not introduce evidence concerning prior violent acts by the alleged victim, the Commonwealth of course will not be entitled to introduce evidence about prior violent acts of the defendant to show that he was likely to have been the first aggressor.

[18]There is no need here to reach the question whether it was error for the judge to extend the *Adjutant* principle to cover the mitigating factors of reasonable provocation, sudden combat, and use of excessive force in self-defense. As the Commonwealth argues, this extension was to the defendant's advantage.

the defendant before the start of trial, the judge should not have instructed the jury that they could consider the bottle incident evidence on the identity of the first aggressor. However, in the circumstances of this case, the error does not require reversal of the defendant's conviction.[19]

Self-defense was at the core of the defendant's defense, and his September 22 encounter with Thomas — the bottle incident — was essential to that theory. It provided a credible explanation why Thomas would be incensed and would push her friends to attack the defendant and, more importantly, explained why the defendant legitimately could be in fear that Thomas and her group were going to hurt him and perhaps kill him. Indeed, it was defense counsel, not the prosecutor, who first referenced the bottle incident, suggesting to the jury in his opening statement that it was because of this episode that the victim, encouraged by Thomas and supported by his other friends, attacked the defendant on September 26. Thereafter, because the September 22 bottle incident provided background and context for the September 26 confrontation, the Commonwealth properly introduced evidence concerning the events of September 22 as part of its case-in-chief. The defendant did not object to the introduction of this evidence, and in fact, his counsel repeatedly raised the issue of the bottle incident during cross-examination of the Commonwealth's witnesses to explain why Thomas urged the victim and others to attack the victim on September 26. In these circumstances, we can say with "fair assurance" that the judge's decision to include the defendant's prior acts of violence in the *Adjutant* instruction without the defendant having been

---

[19]The defendant argues that it is appropriate to review his challenge to the judge's *Adjutant* instruction as it related to his prior violent acts under the prejudicial error standard, see, e.g., *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983) ("An error is nonprejudicial only if . . . the conviction is sure that the error did not influence the jury, or had but very slight effect"), because he timely objected to the instruction. The Commonwealth concedes that the defendant objected to the instruction, but argues that he did not object on the ground that he had failed to receive notice, and therefore the defendant's challenge should be reviewed under the standard governing unpreserved claims of error, that is, for a substantial risk of a miscarriage of justice. We need not resolve this issue, because even if we apply the prejudicial error standard, our conclusion is the same.

provided with timely notice of the possibility was not prejudicial. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

3. *Conclusion.* For the reasons discussed, consistent with the reasoning of *Commonwealth* v. *Adjutant*, 443 Mass. 649 (2005), where a defendant raising a claim of self-defense seeks to introduce evidence of prior violent acts by the alleged victim on the issue of identity of the first aggressor, the Commonwealth may seek to present evidence of prior violent acts of the defendant for the same purpose. The Commonwealth may be permitted to do so, however, only if it provides the defendant with sufficient advance notice of its intent to introduce such evidence and the trial judge determines that introduction of the evidence is more probative of its intended purpose than prejudicial to the defendant.

*Judgment affirmed.*