NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11894

COMMONWEALTH  vs.  LINDA MAYOTTE.


Worcester.     January 7, 2016. - August 19, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.[1]


Rape.  Indecent Assault and Battery.  Child Abuse.  Incest. Reckless Endangerment of a Child.  Intimidation of Witness. Evidence, First complaint, State of mind, Impeachment of credibility, Prior inconsistent statement.  Witness, Intimidation, Impeachment.  Practice, Criminal, Sentence.



Indictments found and returned in the Superior Court Department on March 18, 2010.

The cases were tried before Richard T. Tucker, J.

The Supreme Judicial Court granted an application for direct appellate review.


Eric S. Brandt, Committee for Public Counsel Services, for the defendant.
Ellyn H. Lazar-Moore, Assistant District Attorney, for the Commonwealth.


---

[1] Justices Spina, Cordy, and Duffly participated in the deliberation on this case prior to their retirements.

HINES, J.  A jury convicted the defendant, Linda Mayotte, of rape of a child, G. L. c. 265, § 23 (three indictments); indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B (five indictments); indecent assault and battery on a child over the age of fourteen, G. L. c. 265, § 13H (five indictments); incest, G. L. c. 272, § 17; reckless endangerment of a child, G. L. c. 265, § 13L; intimidation of a witness, G. L. c. 268, § 13B; resisting arrest, G. L. c. 268, § 32B; and unlawful possession of a firearm without a firearm identification card, G. L. c. 269, § 10 (h).[2]  The victim in each of the charged sex offenses was her adopted son, D.M.[3]  The defendant challenges the convictions on three grounds:  (1) error in the exclusion of first complaint evidence relating to her defense that she was the victim, not the perpetrator, of rape by the complainant; (2) error in the exclusion of a statement proffered as evidence of the victim's state of mind; and (3) insufficiency of the evidence to prove the reckless endangerment indictment based on "serious bodily

_____

[2] The jury acquitted the defendant on seven additional indictments charging her, on a joint venture theory, with sex offenses committed against her adopted daughter, V.M. (a pseudonym), by her husband, Joseph Mayotte.  Joseph Mayotte was convicted of rape of a child (two indictments), aggravated rape of a child, indecent assault and battery on a child (three indictments), assault with intent to rape, incest, dissemination of matter harmful to a minor, reckless endangerment of a child, and failure to secure a firearm.

[3] A pseudonym.

injury."  The defendant also challenges her sentence, claiming that the judge may have been influenced by improper factors argued by the prosecutor.  Because the application of the first complaint doctrine to a defendant in a rape prosecution is a question of first impression, we granted the defendant's application for direct appellate review of all her claims.

For the reasons explained below, we conclude that the first complaint rule is a neutral rule of evidence that permits such testimony whenever the credibility of a sexual assault allegation is at issue.  Although the judge erred in ruling that the defendant's first complaint evidence was inadmissible as a matter of law, no prejudice resulted from the exclusion of the evidence.  We also reject the defendant's claim of error in the exclusion of D.M.'s statement, proffered as evidence of his state of mind, as it was not probative of or admissible as evidence of the defendant's state of mind.  We vacate the conviction of reckless endangerment, however, because we agree that the conduct proved at trial -- that the defendant recklessly exposed V.M. to the risk of sexual abuse by Joseph Mayotte -- was insufficient to establish the element of "serious bodily injury" required under the indictment.  Notwithstanding any impropriety in the prosecutor's sentencing remarks, we discern no basis to conclude that the judge was influenced by

those remarks in sentencing the defendant, and therefore, resentencing is not necessary.

Background. Based on evidence presented at trial, the jury could have found the following facts. The defendant and her husband, Joseph, married in 1987. After attempting to have biological children, the Mayottes decided to adopt in 2003. Approximately one year later, they adopted D.M. and V.M., siblings living in an orphanage in Kazakhstan. D.M. and V.M. moved into the Mayotte home in August, 2004. D.M. was twelve years of age, and V.M. was eight years of age.

After the Mayottes told the children that Joseph's parents had died in the house, and that ghosts remained in the house, V.M. became scared of sleeping in her own room. V.M. started to sleep with Joseph; the defendant no longer slept in the bedroom. On a regular basis, Joseph touched V.M.'s private areas, penetrated her vagina and anus, and made her touch his penis. Joseph also showed V.M. pornographic videotapes.

D.M., who struggled to learn English and felt alienated at school, had chronic stomach pains.[4] The defendant would massage his stomach to help him sleep. Starting in January, 2005, the defendant began initiating sexual contact with D.M., including sexual intercourse. According to D.M., sexual contact occurred

---

[4] The pains were later diagnosed as a gall bladder condition, for which D.M. had surgery in 2006.

more than one hundred times between January, 2005, and the spring of 2007. During this time, D.M. made no complaint of sexual abuse to the social worker who conducted home visits on behalf of the adoption agency or the counsellor he saw for twelve sessions. D.M. did not disclose the alleged abuse to his best friend or even his sister, V.M. The sexual contact ceased when the defendant became pregnant with D.M.'s child.[5]

On June 15, 2007, V.M. told two neighbor siblings that her father, Joseph, had been touching her "private areas." The neighbors' mother called the Department of Children and Families (DCF), and that night, a police officer and a social worker arrived at the Mayotte house to investigate. Each child was asked separately if he or she had been or were being inappropriately touched by a parent. Both children denied any such conduct. The denials continued throughout DCF's follow-up visits to the house during 2007. During one such visit, D.M. told an investigator that he "thought the whole thing was BS."

In April, 2009, V.M. told D.M.'s girl friend about her father's abuse. The girl friend's mother spoke to the defendant and notified DCF. The defendant and the defendant's friend, Edward Kassor, questioned V.M. in front of the girl friend and the girl friend's mother. DCF initiated a second investigation

---

[5] The defendant gave birth on January 16, 2008. Deoxyribonucleic acid tests proved that D.M. was the baby's father.

of the family, and during a May, 2009, house visit, D.M. again told DCF representatives that he was not being abused.

After two years of denying sexual abuse, D.M. made his first complaint on June 4, 2009. He made the disclosure after the defendant sent him a text message threatening to report him to the police because he had stolen items of her jewelry. D.M. was visibly upset after receiving the message and fought with his girl friend. When pressed, D.M. told his girlfriend about the defendant's sexual acts. The girl friend insisted that D.M. inform the authorities. That same evening, DCF removed D.M. and V.M. from the Mayotte home.

The defendant testified that she did not rape D.M. and that D.M. used physical force and threats to force her participation in sexual acts with him. According to her testimony, D.M. became sexually "aggressive" in the spring of 2005. On separate occasions, D.M. threw her down on the bed and pinned her arms to her body; grabbed her arm and forced her to the bed; and threw her against a bureau after she bit him while attempting to get away. The defendant testified that she was "trying to still say no" but that "things would escalate very quickly." She claimed that D.M. put his hands on her throat, placed a knife to her throat, and punched her. As for the alleged threats, the defendant testified that D.M.'s "favorite" threat was that he would "go to the police and say that [she] was raping him."

According to the defendant, D.M. made this threat "[e]very time he didn't like [the defendant's] reaction" to his advances. The defendant claimed that this ongoing threat was the reason why she did not make her own first complaint for almost five years after the alleged abuse by D.M. began. D.M. admitted that he would punch holes in his bedroom wall when he was angry, but denied any use of force or coercion against the defendant.

Discussion. 1. First complaint doctrine. The defendant filed a pretrial motion to present "first complaint" testimony from Kassor, in support of her theory of defense that D.M., "wise beyond his years," raped the defendant and controlled her behavior by threatening to make a false allegation of rape. After a hearing, the trial judge denied the motion, reasoning that "[t]he first complaint protocol and doctrine [were] not to curb any abuses of defendants being prejudiced by not explaining themselves. They don't have to explain themselves. The law doesn't require it, and every judge instructs a jury that they do not have to explain themselves. So there's no prejudice if she never made a statement."

On appeal, the defendant urges us to permit the application of the first complaint doctrine to a sexual assault defendant whose defense at trial is that she was the victim of a sexual assault by the complainant rather than the perpetrator. She argues that the first complaint doctrine applies for the benefit

of any party who makes an allegation of sexual assault that is contested by the alleged perpetrator. In the alternative, she argues that the proffered evidence is independently admissible as the Commonwealth "opened the door" by eliciting testimony from multiple witnesses that the defendant "never" complained to anyone about her charge that she was raped by the complainant. The Commonwealth counters that (1) the doctrine of first complaint applies only to statements made by a complaining witness in a sexual assault prosecution, and (2) the defendant's statement was inadmissible hearsay.

We agree with the defendant that the first complaint rule is a neutral rule of evidence, applicable whenever the credibility of a sexual assault allegation is at issue. In the circumstances of this case, however, the judge's error in excluding the defendant's first complaint as a matter of law did not result in prejudice to the defendant. Because the defendant's first complaint proffer would have been insufficient in any event to rebut the Commonwealth's assertion that she "never" complained of rape by the complainant, we reject her claim that it was independently admissible as a prior consistent statement. Last, we reject summarily the Commonwealth's argument that such testimony should be deemed inadmissible on hearsay grounds because, consistent with the purpose of the

first complaint doctrine, such evidence was not offered for its truth.

a. Origin of first complaint doctrine. In resolving the issue before us, we are guided by what we have understood to be the rationale underlying the first complaint doctrine. Previously termed the "fresh complaint" rule, the first complaint doctrine is based on an English common-law assumption that a rape victim who did not immediately speak out about the sexual assault "was in effect [asserting] that nothing violent had been done." Commonwealth v. King, 445 Mass. 217, 228-229 (2005), cert. denied, 546 U.S. 1216 (2006), quoting Anderson, The Legacy of the Prompt Complaint Requirement, Corroboration Requirement, and Cautionary Instructions on Campus Sexual Assault, 84 B.U. L. Rev. 945, 978 & n.198 (2004). "American courts, in turn, endorsed the belief that the failure of a rape victim to make a prompt complaint of a sexual assault was akin to an inconsistent statement at odds with the complainant's court room testimony about the rape." King, supra at 229. The fresh complaint doctrine addressed three concerns regarding potential juror bias in a rape prosecution: that jurors may still believe that a true rape victim immediately discloses the assault; that jurors may draw adverse inferences from the absence of evidence suggesting a prompt complaint; and that

jurors remain skeptical of rape allegations.[6]  Id. at 230.  As a
result, prosecutors are permitted to rebut any inference of
fabrication with witness testimony that the complainant did in
fact tell someone, and that the complaint was prompt or "fresh."
Id. at 229.

In King, 445 Mass. at 237-238, this court replaced the
"fresh complaint" rule with the "first complaint" doctrine, in
recognition of empirical studies showing that immediate
disclosure of sexual assault is not universal.  We determined
that "ostensible 'delay' in disclosing a sexual assault is not a
reason for excluding evidence of the initial complaint; the
timing of a complaint is simply one factor the jury may consider
in weighing the complainant's testimony."  Id. at 242.  In
balancing the competing interests, we limited first complaint
testimony to that of one witness -- the first person told of the
assault.  Id. at 243.  We were mindful that multiple complaint
witnesses could "unfairly enhance a complainant's credibility as

---

[6] Because "a child's circumstances commonly make it
difficult, if not impossible, for the child to make a prompt
complaint of sexual assault," Commonwealth v. Montanez, 439
Mass. 441, 453-454 (2003) (Sosman, J., concurring), citing
Commonwealth v. Fleury, 417 Mass. 810, 813-815 (1994), we
expanded the fresh complaint rule to permit "a child's much
later report of sexual assault . . . whenever there is a
reasonable explanation for the child's failure to make a prompt
complaint."  Montanez, supra.  We later applied this reasoning
to adult complainants.  See Commonwealth v. King, 445 Mass. 217,
240 (2005), cert. denied, 546 U.S. 1216 (2006).

well as prejudice the defendant by repeating for the jury the often horrific details of an alleged crime."  Id.

b.  Scope of first complaint doctrine.  Although the issue has arisen solely in the context of a jury's assessment of the credibility of a complaining witness in a sexual assault prosecution, nothing in our jurisprudence precludes the application of the first complaint doctrine to a defendant in a sexual assault prosecution.  As demonstrated by our cases, the first complaint rule owes its genesis to the confluence of two factors:  (1) that the central issue is a sexual assault rather than some other nonsexual crime; and (2) the need to provide to the jury "as complete a picture as possible of how the accusation of sexual assault first arose."  King, 445 Mass. at 247.  At its core, therefore, the doctrine exists to facilitate credibility determinations where an allegation of sexual assault is at issue.  This purpose is no less important when a jury is called upon to assess such an allegation made by a defendant.

Even when the first complaint rule was assumed to be available only to the named complainant in a sexual assault prosecution, we stressed the importance of an informed determination of credibility:  "The doctrine . . . is not intended to be used as a shield to bar the jury from obtaining a fair and accurate picture of the Commonwealth's case-in-chief." Commonwealth v. Arana, 453 Mass. 214, 228-229 (2009).  In a

similar vein, we ask whether the application of the doctrine to a defendant in a sexual assault prosecution undermines or otherwise perverts this purpose.  It does not.  The issue of witness credibility is the same whether the person claiming such assault is the defendant or the complainant.  A defendant in a sexual assault prosecution, who claims to have been so assaulted by the complainant, faces the same credibility obstacle in proving his or her defense as the Commonwealth faces in proving the indictment.  In our view, therefore, the identity of the party making the allegation of sexual assault does not dictate the application of the doctrine.  The defendant is no less entitled than the Commonwealth to the benefit of a principle intended to mitigate the inherent obstacles to establishing the credibility of a sexual assault allegation.

Our reluctance to limit the application of this doctrine for the benefit of the Commonwealth reflects the concern we expressed in Commonwealth v. Morales, 464 Mass. 302, 308-310 (2013), that one-sided evidentiary rules are inherently unfair. In Morales, we rejected the defendant's argument that the rule we articulated in Commonwealth v. Adjutant, 443 Mass. 649, 650 (2005) (permitting defendant to show prior acts of violence by victim), should apply only to the defendant.  Morales, supra at 309.  We noted that if evidence of "prior acts of violence by the victim will assist a jury . . . , it follows that evidence

of [such acts] committed by the defendant will do the same."
Id. Thus, in deference to the same fairness concerns, we are
persuaded that the first complaint doctrine must be neutral, and
that it may apply whenever the credibility of a sexual assault
allegation is a live issue in the case.

The Commonwealth argues that application of the first
complaint doctrine to defendants will cause jury confusion as
well as create a trial within a trial. We agree with the
defendant, however, that such concerns do not militate against
allowing a defendant in a sexual assault prosecution to proffer
first complaint evidence. The matter properly may be relegated
to the trial judge who, in the exercise of his or her
discretion, is adequately equipped by the existing rules of
evidence to prevent any such confusion. See generally Mass. G.
Evid. §§ 403, 413 (2016). See also Mass. R. Crim. P. 11 (a),
(b), as appearing in 442 Mass. 1509 (2004); Mass. R. Crim. P.
14 (a) (1) (B), as amended, 444 Mass. 1501 (2005).

2. The defendant's first complaint evidence. Having
determined that a defendant in a sexual assault prosecution may
offer first complaint evidence as part of the defense to the
charge, we review the judge's ruling to determine if it resulted
in prejudice to the defendant. Here, defense counsel objected
numerous times to the judge's rulings on the defendant's proffer
of first complaint evidence. Counsel objected at the motion

hearing and the judge affirmatively recognized the objection on the record. Counsel then renewed the objection at trial. Because the issue was preserved, we review the decision "to ensure 'that the error[s] did not influence the jury or had but very slight effect.'" Arana, 453 Mass. at 228, quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

Reviewing the error under this standard, we discern no prejudice to the defendant. The defendant's proffer did not specify any details of the proposed testimony. The sole reference to the substance of the testimony was as follows: "This testimony would be elicited from Edward Kassor, a close friend of [the defendant's]." In the absence of any necessary details, this proffer would have had little or no probative value as first complaint testimony. Had the judge considered the proffer, rather than denying it as a matter of law, clarification would have been required. Further inquiry would have revealed the defendant's equivocal statement to the police that she "tried to tell [her] friend Ed," which falls short of an affirmation that she did in fact disclose the alleged rape by the complaining witness. See Commonwealth v. Murungu, 450 Mass. 441, 445-446 (2008) (expressions of "unhappiness, upset or other such feelings" not statement of sexual assault). Considering the vague nature of the defendant's proffer and the strength of the Commonwealth's case, we are persuaded that the omission of

her first complaint evidence "did not influence the jury or had but very slight effect" (citation omitted). Flebotte, 417 Mass. at 353.

As to the defendant's claim that her first complaint testimony was independently admissible because the Commonwealth "opened the door" with its questions to various witnesses, see Commonwealth v. Kebreau, 454 Mass. 287, 298-299 (2009) (admitting statement of sexual assault for purpose of rehabilitation), we discern no error in the judge's exclusion of her statement on this ground.

"[A] prior consistent statement made before the witness had incentive to fabricate may be admitted for the limited purpose of rebutting the claim of recent fabrication." Commonwealth v. Tennison, 440 Mass. 553, 563 (2003). See Mass. G. Evid. § 613(b)(2) (2016). However, "the impeachment of a witness by prior inconsistent statements or omissions does not, standing alone, entitle the adverse party to introduce other prior statements made by the witness that are consistent with [her] trial testimony." Commonwealth v. Bruce, 61 Mass. App. Ct. 474, 482 (2004), citing Commonwealth v. Retkovitz, 222 Mass. 245, 249-250 (1915).

The defendant complains that the prosecutor elicited testimony from numerous witnesses, establishing that the defendant did not disclose the alleged rape to them

individually.  The substance and the timing of the statement are dispositive of this claim.  First, the statement allegedly made to Kassor was ambiguous, and thus not a prior consistent statement in that it did not explicitly assert a claim of rape.  Indeed, the proffered statement was neither a first complaint nor corroboration of a first complaint.  See Murungu, 450 Mass. at 445-446.  Second, it was undisputed that the defendant did not make the statement until after D.M. had made his complaint and after both children had been removed from the home.  Commonwealth v. Rivera, 430 Mass. 91, 99-100 (1999) (prior consistent statement made after motive to fabricate arose inadmissible).  Therefore, the judge committed no error in excluding the alleged statement from the evidence on this ground.

3.  Exclusion of D.M.'s statement.  The defendant filed a separate motion in limine, seeking to introduce D.M.'s statement to his grandfather, "I can beat any system," as evidence probative of the defendant's state of mind.  More specifically, the defendant proffered the statement to establish that she felt "powerless" in her parental relationship with D.M., such that she succumbed to his threats and was forced into sexual conduct with him.  Citing Commonwealth v. Benjamin, 430 Mass. 673, 679 (2000), the judge denied the motion on the ground that "[p]rior bad acts of the victim and its effect on the state of mind of a

defendant is allowed only in self-defense cases." The judge ruled that defense counsel was permitted to ask D.M., "Do you believe you can beat any system?" However, after D.M. responded, "No," counsel was not allowed to impeach him by calling the grandfather as a witness for that purpose.

The judge properly excluded the grandfather's testimony as hearsay because it was not shown to relate to either D.M.'s or the defendant's state of mind. Admissibility required a demonstrated nexus between D.M.'s statement and the defendant's state of mind. On this record, however, the defendant failed to make an adequate showing that D.M.'s statement was related to the rape prosecution, that the defendant was aware of it, and that it was a factor in the charged conduct. In the absence of these facts as a foundation for admissibility, we do not fault the judge's ruling that D.M.'s statement did not bear on the defendant's state of mind.

However, we agree with the defendant that the judge should have allowed defense counsel to impeach D.M. with his statement to the grandfather. See Commonwealth v. Mahar, 430 Mass. 643, 649-650 (2000) (adopting proposed Mass. G. Evid. § 806 to permit impeachment by prior inconsistent statement). The modified question, "Do you believe you can beat any system?" permitted by the judge did not accomplish this purpose. Without the ability to establish D.M. as the declarant in boasting of his ability to

"beat any system," defense counsel lost the benefit of impeachment of D.M. with his prior inconsistent statement. Nonetheless, this limit on impeachment did not result in prejudice to the defendant. See Commonwealth v. Roberts, 433 Mass. 45, 51 (2000); Commonwealth v. Smiledge, 419 Mass. 156, 159 (1994). In allowing the modified question, the judge "did not preclude all inquiry" on the issue. Commonwealth v. Tweedy, 54 Mass. App. Ct. 56, 60 (2002).

4. Reckless endangerment indictment. The defendant claims the indictment charging reckless endangerment of a child on the basis of serious bodily injury was not proved and, therefore, the resulting conviction must be reversed. We agree.

"[A]rticle 12 of the [Massachusetts Declaration] of Rights . . . requires only such particularity of allegation as may be of service to a person charged with crime in enabling him [or her] to understand the charge and prepare him [or her] defense." Commonwealth v. Farmer, 218 Mass. 507, 509 (1914); G. L. c. 277, § 34. "An indictment conforming with the statutory form is sufficient." Commonwealth v. Baron, 356 Mass. 362, 364 (1969). However, an indictment that entirely omits a charge or does not conform to the substance of the statutory language defining the elements of the crime does not offer a defendant adequate notice of the nature of the charges against him or her. See Commonwealth v. Garrett, 473 Mass. 257, 267 n.12 (2015)

(indictment for armed robbery with firearm cannot support conviction of armed robbery with dangerous weapon).

Here, a grand jury indicted the defendant on one charge of recklessly exposing V.M. to "a substantial risk of serious bodily injury," pursuant to G. L. c. 265, § 13L.  The indictment omitted completely any reference to the alternative theory on which the charge might be brought, "sexual abuse" of the child. See G. L. c. 265, § 13L.  As defined in the statute, "serious bodily injury" results in "permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death."  G. L. c. 265, § 13L.  The Commonwealth presented no evidence at trial regarding serious bodily injury to V.M.  The evidence related entirely to the defendant's responsibility for her husband's sexual abuse of V.M.  The judge, however, introduced the theory that the defendant recklessly exposed V.M. to a substantial risk of "sexual abuse" during his instructions to the jury.  In doing so, he improperly expanded the indictment to encompass both theories of liability.  See Garrett, 473 Mass. at 267.  The end result is that the defendant was convicted of a crime for which she had not been indicted by a grand jury.  See Commonwealth v. Barbosa, 421 Mass. 547, 554 (1995) (art. 12 bars felony conviction without grand jury indictment).  Therefore, we disagree with the Commonwealth that the reckless endangerment

charge based on sexual abuse was "contextualized" by a "multi-count indictment" that included numerous sexual assault charges. Due process requires that defendants be given sufficient notice of the charges against them, notice that was not given here. Farmer, 218 Mass. at 509.

5. Sentencing. The defendant requests resentencing because the prosecutor made numerous improper statements at sentencing that potentially could have influenced the judge's determinations. Specifically, the prosecution urged the court to "send a message to the defendants in the community of Worcester County" that crimes against children would not be tolerated. The prosecutor also stated that the defendant had "lied" and had "falsely accused" the victims. Without comment, the judge sentenced the defendant to three concurrent terms of from eighteen to twenty-two years in State prison -- lower than the sentence of from thirty to thirty-three years requested by the Commonwealth and higher than the sentence of from five to seven years recommended by the defendant.

A sentencing judge enjoys significant latitude in sentencing. Commonwealth v. Celeste, 358 Mass. 307, 310 (1970). We will not vacate a sentence "unless we have been able to identify clear legal error." Commonwealth v. Woodward, 427 Mass. 659, 685 (1998). Where there is a "suggestion of impropriety," Commonwealth v. Stuckich, 450 Mass. 449, 462

(2008), the judge may voluntarily and explicitly reject reliance on improper arguments. See Commonwealth v. Goodwin, 414 Mass. 88, 91-92 & n.3 (1993). However, a judge's decision not to disavow such arguments explicitly does not in and of itself provide evidence that a judge deviated from his or her duty. Goodwin, supra at 92.

Although the Commonwealth concedes that it was improper to ask the judge to "send a message" to the Worcester County community regarding crimes against children, we are not persuaded that the judge considered the prosecutor's comments. We affirm the defendant's sentences, except as to that imposed on the reckless endangerment conviction.

Conclusion. We conclude that a defendant may proffer first complaint evidence where the defendant claims to be the victim of sexual assault and that claim is a live issue in the case. The exclusion of the defendant's first complaint, however, did not result in prejudice. We vacate the defendant's judgment of conviction as to the charge of reckless endangerment and order judgment for the defendant as to that charge. We affirm the other judgments of conviction.

So ordered.