SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. WEBER ANDRADE

 
 Docket:
 SJC-13636
 
 
 Dates:
 December 4, 2024 – June 4, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Assault and Battery by Means of a Dangerous Weapon. Evidence, Subsequent misconduct, Prior violent conduct, Relevancy and materiality, Self-defense. Self-Defense. Practice, Criminal, Instructions to jury. Defense of Others.
 
 

  
     Indictment found and returned in the Superior Court Department on September 12, 2018.
      The case was tried before Janice W. Howe, J.
      The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
      Suzanne LeVert for the defendant.
      Kristen W. Jiang, Assistant District Attorney, for the Commonwealth.
      Jennifer M. Herrmann, Claudia Leis Bolgen, & Alexandra Arnold, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.
      BUDD, C.J.  After stabbing his father with a knife at a family barbeque, the defendant was convicted of assault and battery by means of a dangerous weapon in violation of G. L. c. 265, § 15A (b).  On appeal, the defendant claims that the judge improperly barred him from introducing evidence of the victim's subsequent act of violence to advance the defendant's theory of self-defense, pursuant to Commonwealth v. Adjutant, 443 Mass. 649 (2005).  The defendant additionally claims that the judge erred in failing to sua sponte instruct the jury on defense of another.  For the reasons discussed infra, we affirm.[1]
      Background.  On May 5, 2018, the victim and his wife, Hope, hosted a barbecue at their home.  The defendant and his wife, Luila, attended, along with other family members and friends.  Just after 1 A.M., at Hope's request, Luila asked a group of late-arriving guests to leave.  As a result, the victim became upset and began to yell at Luila, which led to a confrontation between the defendant and the victim.
      Video footage from the victim's home surveillance system showed the victim standing on an elevated deck, yelling down at Luila, who was standing off camera in the backyard.  The footage also captured the defendant ascending the stairs and the two men pushing each other.  Both parties agree that the victim pushed the defendant first.  As the two argued, the victim pushed the defendant against the side of the house and said, "Stop, I'm going to hurt you."
      After this initial confrontation, the defendant descended the stairs and the victim followed.  Testimony varied as to what occurred next.  The victim testified that upon reaching the backyard, he spoke again with Luila.  The defendant then came up from behind, stabbed the victim in the left side of his chest with a knife and stated, "I'm going to kill you."  The defendant was then restrained by a friend, allowing the victim to retreat into the house.
      Luila, by contrast, testified that after the victim descended the stairs to the backyard, he began yelling at her and pointing his finger in her face.  According to Luila, the defendant told the victim that he needed to respect her, at which point the victim began yelling at the defendant, pushing him, and getting "very aggressive."  Luila testified that the two men then started pushing one another and that it was not until later that she learned that the defendant stabbed the victim.
      Police arrived soon after the stabbing, but the defendant was no longer at the house.  Approximately two hours later, police officers located the defendant walking down a street one mile away from the scene of the stabbing.  The defendant later told police that he stated, "Stop.  I'm a man.  It's my wife.  I have to protect my wife," when the victim was yelling at Luila.  The defendant subsequently was indicted for assault and battery by means of a dangerous weapon in violation of G. L. c. 265, § 15A (b).
      Before trial, the defendant filed a motion in limine seeking to present evidence suggesting that the victim instigated the fight at the barbeque.  Specifically, the defendant claimed that, approximately eighteen months after the stabbing incident in this case, the victim pushed Hope in the chest with enough force that she almost fell backwards.  The defendant contended that he should be permitted to offer this evidence pursuant to our decision in Adjutant.[2]  In opposing the motion in limine, the Commonwealth argued that our holding in Adjutant did not apply here because the victim's conduct occurred after the defendant's charged conduct, and that the victim's conduct -- a single push -- was more prejudicial than probative of the victim's aggression.
      Concluding that Adjutant was inapplicable to a victim's subsequent acts of violence, the judge denied the defendant's motion and, after a jury trial, the defendant was convicted.  The judge sentenced him to from two and one-half to four years in State prison.  The defendant appealed, and we transferred the case to this court on our own motion.
      Discussion.  The defendant contends that the judge erred by precluding him from introducing evidence of the victim's subsequent violent act as evidence that the victim initiated the physical altercation, and by failing to instruct the jury on defense of another.
      1.  Admissibility of subsequent violent acts.  a.  Purpose and scope of Adjutant evidence.  Generally, character or "bad act" evidence may not be offered as proof that a person has a propensity to behave in a certain way and therefore was likely to have done so on the particular occasion at issue.  See Commonwealth v. Bonds, 445 Mass. 821, 829 (2006); Mass. G. Evid. § 404(a)(1) (2025).  However, this court carved out a narrow exception to this general rule:  where the identity of the initial aggressor (or the first to use deadly force) is in dispute, a defendant claiming self-defense may offer evidence of specific acts of violence allegedly initiated by the victim to support a claim that the victim was the first aggressor in the charged offense.  Adjutant, 443 Mass. at 664.  See Commonwealth v. Chambers, 465 Mass. 520, 529-530 (2013); Mass. G. Evid. § 404(a)(2)(B) (2025).
      This exception to the common-law rule prohibiting propensity evidence provides the jury with "a full picture of the altercation . . . to make an informed decision about the identity of the initial aggressor."  Commonwealth v. Deconinck, 480 Mass. 254, 263 (2018), quoting Commonwealth v. Pring-Wilson, 448 Mass. 718, 737 (2007).  As we explained not long ago:
"Our rationale for creating this exception to the general prohibition on propensity evidence can be found in the view that evidence reflecting the victim's propensity for violence has substantial probative value and will help the jury identify the first aggressor [or the first to initiate or threaten deadly violence] when the circumstances of the altercation are in dispute.  Whether [the victim] was a violent [person], prone to aggression . . . , throws light on the crucial question at the heart of such cases -- who attacked whom first or who escalated the situation to one involving deadly force.  And [t]o decide what really occurred the jury need[] all the available facts, including evidence of [the victim's prior violence]" (quotations and citations omitted).
Commonwealth v. Souza, 492 Mass. 615, 622-623 (2023).
      Although Adjutant evidence traditionally comprises acts that have occurred prior to the alleged offense, here the defendant sought to offer an event that occurred months later.  The judge declined to admit the evidence, indicating that she did not believe that she had discretion to do so.
      As Adjutant evidence is meant solely to correlate a victim's propensity to commit acts of violence with the likelihood that the victim was the first aggressor, its admissibility is not dependent on whether the defendant was aware of the violent act at the time of the alleged offense.[3]  See Commonwealth v. Morales, 464 Mass. 302, 307 (2013), quoting Adjutant, 443 Mass. at 654.  By this same logic, evidence of a victim's violent acts is probative of the identity of the first aggressor regardless of whether the violent act occurred prior to, or after, the offense at issue.  Moreover, for the same reasons that bad act evidence occurring after a crime is admissible to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation, Commonwealth v. Crayton, 470 Mass. 228, 249 (2014), so too is evidence of subsequent violent acts under Adjutant.[4]
      b.  Analysis.  Here, the judge erred in believing that Adjutant is not applicable to subsequent acts of violence.  See Souza, 492 Mass. at 626, and cases cited (judge's failure to recognize discretion in admission of evidence is error of law).  Nevertheless, the judge ultimately was correct to bar its admission.
      The purpose of Adjutant evidence is to identify either the first aggressor or the first to use deadly force, neither of which was in dispute here.[5]  See Souza, 492 Mass. at 631.  The Commonwealth concedes that the victim was the first aggressor as he pushed the defendant first.  And based on unrefuted trial testimony, the defendant unilaterally escalated what started as a pushing match on the porch to a potentially lethal stabbing.  Although the defendant claims that evidence of the victim's subsequent pushing incident would have demonstrated the victim's "level of aggression toward [Hope that] in turn bore on his behavior toward Luila and [the defendant] prior to [the defendant]'s use of the knife," this would not have been a proper use of the evidence under Adjutant.[6]  See id. at 632.  See also Commonwealth v. Camacho, 472 Mass. 587, 594 (2015) (Adjutant evidence inadmissible where question is not who began altercation or escalated it to deadly force, but instead whether defendant was entitled by law to use such force).
      2.  Jury instruction on defense of another.  The defendant also contends that the judge erred by failing to instruct the jury on defense of another sua sponte.  We are not persuaded.
      An instruction on defense of another is appropriate if, in the light most favorable to the defendant, (1) "a reasonable person in the actor's position would believe his intervention to be necessary for the protection of [a] third person," and (2) "in the circumstances as that reasonable person would believe them to be, the third person would be justified in using such force to protect himself."  Commonwealth v. Martin, 369 Mass. 640, 649 (1976).  Commonwealth v. Young, 461 Mass. 198, 208 (2012), quoting Martin, supra.  See Commonwealth v. Adams, 458 Mass. 766, 774 (2011) (elements of defense of another track those of self-defense).
      Although the defendant argues on appeal that he reasonably believed his wife to be at risk of danger from the victim, that was not his position at trial.  In a sidebar conference, the judge asked trial counsel if the defendant's statement to police, "I have to protect my wife," would be offered to demonstrate self-defense or defense of another.  Although trial counsel equivocated, he ultimately indicated that the statement would be offered to support the former.[7]  This response aligned with the defendant's theory of defense, which focused on his own immediate proximity to the victim as the basis for believing that he was in danger.  Moreover, no view of the facts, even considered in the light most favorable to the defendant, suggested that the defendant reasonably believed he had to use deadly force against the victim to protect his wife.  Finally, trial counsel did not argue defense of another in closing.  Where the defendant placed no reliance on the theory of defense of another, and no trial evidence suggested that the defendant reasonably believed he had to use deadly force against the victim to protect his wife, the judge was not required to provide an instruction on that theory, sua sponte or otherwise.  See Commonwealth v. Norris, 462 Mass. 131, 143 (2012) (no requirement to instruct on defense of another where defendants placed no reliance on theory and no evidence existed to support it).  There was no error.
                                          
 
Judgment affirmed.
footnotes

          [1] We acknowledge the amicus brief submitted by the Massachusetts Association of Criminal Defense Lawyers.
          [2] As discussed infra, in Adjutant, 443 Mass. at 664, we recognized a narrow exception to the general rule against propensity evidence in certain cases of self-defense.
          [3] Although a defendant need not be aware of a victim's specific violent acts in order for such evidence to be admissible pursuant to Adjutant, if the defendant is aware of the victim's reputation for violence or specific violent acts, such evidence may also be admissible "to demonstrate, when relevant, the defendant's reasonable apprehension of the victim," that is, as proof of the defendant's state of mind.  Souza, 492 Mass. at 620-621.  See Mass. G. Evid. § 404(a)(2)(C) (2025).
               [4] Other jurisdictions that have considered this issue similarly have held that evidence of a victim's subsequent acts of violence may be admissible.  See, e.g., People v. Shoemaker, 135 Cal. App. 3d 442, 447-448 (1982) ("incongruent" to claim that victim's subsequent conduct irrelevant to proving character during earlier incident); State v. Jordan, 329 Conn. 272, 282 (2018) ("we cannot say that a subsequent act of violence . . . could never be probative of whether the victim acted in conformity with that conduct during the charged incident"); People v. Degrave, 2023 IL App (1st) 192479 ¶¶ 81-87 (victim's subsequent violent acts admissible to resolve identity of first aggressor); Commonwealth v. Christine, 633 Pa. 389, 399 (2015) ("we do not endorse the claim that a subsequent conviction can never be probative and admissible").
               [5] The identity of the initial aggressor was not relevant in any case because the defendant was the first to use deadly force in the dispute.  See Commonwealth v. Pike, 428 Mass. 393, 396 (1998) (deadly force in self-defense not justified absent reasonable threat of imminent danger of death or serious bodily harm).
               [6] The defendant also appears to have suggested at trial that the victim's larger physical stature and alleged aggressive conduct represented a threat of deadly force warranting a deadly response.  The Adjutant evidence that the defendant sought to admit (i.e., evidence of the victim's subsequent act of pushing his wife) would not have supported any such claim.  Compare Commonwealth v. Vargas, 475 Mass. 338, 347-348 (2016) (evidence concerning victim's violent acts found "cumulative and unnecessary" in making defendant's self-defense case where evidence that victim was trained in unarmed combat, "including the incapacitation and killing of individuals, with or without weapons," already admitted for that purpose).
          [7] Trial counsel responded:
"Defense of himself, but I agree it gets a little muddied because, while this is all going on, he's being assaulted by the victim in the case, too, while the victim has also –‑ has just yelled at his wife and, etcetera.  So it is a little muddy, but I still think it's relevant to defense of himself.  I don't think it's quite defense of another."