NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12597


COMMONWEALTH  vs.  ARISMENDY ESPINAL.



Essex.      December 6, 2018. - May 6, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Indecent Assault and Battery.  Jury and Jurors.  Interpreter.
    Practice, Criminal, Jury and jurors, Empanelment of jury,
    Examination of jurors, Voir dire, Interpreter, Instructions
    to jury.  Evidence, Inflammatory evidence, First complaint.




    Complaint received and sworn to in the Lawrence Division of
the District Court Department on December 14, 2015.

    The case was tried before Michael A. Uhlarik, J.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Rebecca Kiley, Committee for Public Counsel Services, for
the defendant.
    Catherine Patrick Sullivan, Assistant District Attorney,
for the Commonwealth.
    J. Anthony Downs, for Lawyers for Civil Rights & others,
amici curiae, was present but did not argue.


    LENK, J.  A jury in the District Court convicted the

defendant of indecent assault and battery on a twelve year old

child.  On appeal, the defendant, whose native language is Spanish, maintains that the judge erred in denying his request that a question be posed collectively to potential jurors about bias toward non-English speakers.  He argues further that the judge abused his discretion by allowing the introduction of prejudicial testimony from an investigator and testimony that amounted to improper bolstering by the first complaint witness.  Finally, the defendant contends that the judge should have given the jury a modified form of the first complaint instruction.

While we recognize that there may well be bias toward non-English speakers, and that a thorough voir dire is necessary to ensure an unbiased jury, in the circumstances here, we discern no abuse of discretion by the trial judge in declining to ask the requested question.  We conclude further that the defendant's other arguments are unavailing, and affirm the conviction.  Going forward, however, we anticipate that where a defendant is entitled to the services of a translator because of an inability to speak English, the judge will, on request, ordinarily pose a question to the venire regarding language-related bias.[1]

1.  <u>Facts</u>.  We summarize the facts that the jury could have found, reserving additional details for discussion of specific

---

[1] We acknowledge the amicus brief submitted by Lawyers for Civil Rights, Centro Presente, and Brazilian Workers Center.

issues.  See <u>Commonwealth</u> v. <u>Clemente</u>, 452 Mass. 295, 299 (2008), cert. denied, 555 U.S. 1181 (2009).

a.  <u>Assault</u>.  At the time of the complaint, the victim, Sofia[2] was twelve years old.  She recently had moved to the United States from Spain and was living with her single father in Lawrence.  When her father was at work, the victim often was looked after by her father's friend, Eusabia Magali Concepcion.  Concepcion was like a "grandmother" or "mother" to Sofia.  Concepcion babysat her over the course of approximately one year.

When Concepcion looked after Sofia, Sofia would go to Concepcion's apartment.  Concepcion shared the apartment with the defendant, her romantic partner.  When the victim was at the apartment, the defendant sometimes was there, too.

In January 2015, Concepcion left the defendant and the victim alone while Concepcion took a shower.  The victim had been left alone with the defendant before, and there were no allegations that anything improper had taken place during those times.  This time, however, the defendant gave the victim wine and insisted that she drink it, at one point "forc[ing]" her, despite her protests.  The wine made her feel dizzy.  The defendant then told her to stick out her tongue, and he "sucked

---

[2] A pseudonym.

[her] tongue" with his mouth.  He asked her to stick out her tongue again, but she refused.

When Concepcion returned from the shower, the victim said nothing about what had happened because she was "scared that [the defendant] was going to do something to [her]."  Instead, she went into the bathroom and washed out her mouth.  She called her father to pick her up and take her home.  The victim's father testified that, when she got into his vehicle, he "knew something was wrong because I know her. . . .  She's my daughter.  I'm a father and a mother.  I know her.  I know when she is worried and I know when she is not worried."

The automobile was being driven by Sofia's father's boss.  Because the boss was in the vehicle, she said nothing about the incident during the ride home.  When the victim and her father got out of the car and entered their house, however, she began crying "a lot" and told her father what had happened.  She spent much of the night washing out her mouth.

The defendant was charged with indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B.

b.  Trial.  The case was tried in the District Court in June of 2017.  Throughout trial, the defendant required the use of a Spanish-speaking interpreter.[3]

Before trial, the defendant submitted a written request that certain questions be posed to the venire, collectively, during voir dire.  The requested questions were "mostly standard questions," with the exception of the final question:  "Do you have any problem with a defendant that requires the services of a Spanish-speaking interpreter?"  The Commonwealth did not object to the final question being asked.  Defense counsel explained the reasons the question should be asked as follows:

> "I do think that the question about a witness or a defendant that requires the services of the Spanish-speaking interpreter is important . . . .  The concern is a racial bias, or some sort of ethnic bias.  There's a lot of people that believe that if you're in this country and you don't speak English, that you've done something wrong, period.  My client is a naturalized citizen of the United States.  I think that that is a huge bias."

The judge denied the request; counsel objected, citing the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and arts. 12 and 14 of the Massachusetts

---

[3] As noted, the defendant's native language is Spanish.  He does not speak English.  The proceedings took place in English. Two witnesses testified for the Commonwealth in English (the victim and an investigator from the Department of Children and Families), and one witness testified in Spanish (the victim's father).  The defense also called one witness, who testified in Spanish.  The witnesses who testified in Spanish made use of a Spanish-language interpreter.

Declaration of Rights. Counsel asserted further, "I think that racial bias is something that should be explored when the defendant is of a minority race, in this case, Latino." The judge clarified:

The court: "Is the complainant a different ethnicity?"

The prosecutor: "No."

The court: "Okay. No. I'm not going to give it to you."

The attorneys for both sides were introduced to the members of the venire. The witnesses, as well as the defendant, were asked to stand when their names were called. The interpreter was not introduced.

The judge posed several questions to the collective venire regarding bias, including, "[A]re any of you aware of any bias or prejudice that you have toward either the defendant or the prosecution?" and "[D]o any of you know of any reason why you would not be impartial in this case and be able to render a true and just verdict based solely on the evidence and the law?" No prospective juror indicated an affirmative response to either question.[4]

The jury were sworn, and trial commenced. Throughout the trial, the jury heard testimony from four witnesses. Among

---

[4] During individual voir dire, the judge also asked, "[I]s there anything about this charge that would make it difficult for you to be impartial?"

them, the victim's father testified as the first complaint witness, and an investigator for the Department of Children and Families (DCF) testified as to statements made by the defendant during an interview.

The jury returned a verdict of guilty. The defendant commenced a timely appeal, and we allowed his motion for direct appellate review.

2. Discussion. The defendant claims that four errors at trial warrant a new trial: (1) the judge improperly denied his request to pose a question to the venire regarding language-related bias; (2) the judge permitted prejudicial testimony from the DCF investigator; (3) the judge permitted improper bolstering of the victim's credibility through the first complaint witness; and (4) the judge improperly instructed the jury regarding first complaint testimony. We discern no error warranting a new trial.

a. Jury voir dire. The defendant maintains that the judge erred in denying his request to ask the members of the venire, collectively, "Do you have any problem with a defendant that requires the services of a Spanish-speaking interpreter?"

"A criminal defendant is entitled to a trial by an impartial jury pursuant to the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights." Commonwealth v. Williams, 481 Mass. 443, 447

(2019). "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors" (citation omitted). Commonwealth v. Dabney, 478 Mass. 839, 848, cert. denied, 139 S. Ct. 127 (2018). Following voir dire, a judge's determination that a jury are impartial will not be disturbed absent a clear error of law or abuse of discretion. Id.

General Laws c. 234A, § 67A, governs the examination of jurors during voir dire. The first paragraph of that statute provides, in relevant part:

> "Upon motion of either party, the court shall . . . examine on oath a person who is called as a juror, to learn whether the juror . . . has expressed or formed an opinion, or is sensible of any bias or prejudice."

We have not required, however, that judges ask every question requested by a defendant. See Commonwealth v. Morales, 440 Mass. 536, 548-549 (2003), quoting Commonwealth v. Sanders, 383 Mass. 637, 341 (1981) ("[a] judge has broad discretion as to the questions to be asked, and need not put the specific questions proposed by the defendant"). Rather, in most cases, the proper scope of jury voir dire is left to the sound discretion of the trial judge. See Commonwealth v. Silva, 455 Mass. 503, 512 (2009). "A trial judge, who is aware of the facts of a particular case and can observe firsthand the demeanor of each prospective juror, is in the best position to determine what

questions are necessary reasonably to ensure that a particular jury can weigh and view the evidence impartially."  Commonwealth v. Lopes, 440 Mass. 731, 736 (2004).

i.  Mandatory questions.  Certain categories of questions, however, must be asked.  See Silva, 455 Mass. at 512.  General Laws c. 234A, § 22, for example, established the confidential juror questionnaire, which requires that prospective jurors be asked to respond, in writing, to a series of personal questions concerning, among other things, their home address, birthdate, family members, and jobs.[5]  The first paragraph of G. L. c. 234A, § 67A, moreover, establishes a separate set of topics about which a trial judge must examine prospective jurors in all criminal cases.[6]  Neither statute explicitly requires questions concerning language-related biases.

---

[5] General Laws c. 234A, § 22, requires that the questionnaire elicit

> "the juror's name, sex, age, residence, marital status, number and ages of children, education level, occupation, employment address, spouse's occupation, spouse's employment address, previous service as a juror, present or past involvement as a party to civil or criminal litigation, relationship to a police or law enforcement officer, and such other information as the jury commissioner deems appropriate."

[6] General Laws c. 234A, § 67A, inserted by St. 2016, c. 36, § 4 (formerly G. L. c. 234, § 28), mandates that several categories of questions be asked in every criminal case, including questions regarding the presumption of innocence, the Commonwealth's burden of proof, and the absence of any burden on the defendant.

The second paragraph of G. L. c. 234A, § 67A, requires additional inquiry of prospective jurors,

"[where] it appears that . . . a decision [may] be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons."

We have interpreted this language to mean that, where a defendant can show that "there exists a substantial risk of extraneous issues that might influence the jury," additional questioning is required. See Lopes, 440 Mass. at 736. In such circumstances, the questions are to be posed to each prospective juror "individually and outside the presence of other persons." See G. L. c. 234A, § 67A.

Under our superintendence powers, we have determined that a substantial risk of extraneous influence exists, as a matter of law, whenever the victim and the defendant are of different races or ethnicities, and the crime charged is murder, rape, or sexual offenses against children.[7] Accordingly, on the request of a defendant, judges are required to conduct individual voir dire regarding race and ethnicity in such cases. See Commonwealth v. Young, 401 Mass. 390, 398 (1987) (murder);

---

[7] Individual voir dire also is required, upon request, when a defendant indicates that lack of criminal responsibility may be at issue. See Commonwealth v. Seguin, 421 Mass. 243, 249 (1995), cert. denied, 516 U.S. 1180 (1996).

Commonwealth v. Hobbs, 385 Mass. 863, 873 (1982) (sexual offenses against children); Sanders, 383 Mass. at 640-641 (rape). See also Commonwealth v. Colon, 482 Mass. 162, (2019) (expanding requirement to include not only "race," but also "ethnicity").

The defendant does not maintain that he was of a different race or ethnicity from that of the victim, and indeed, both the victim and the defendant appear to have been of Hispanic origin.[8] Nor does the defendant argue that a substantial risk of an extraneous influence was present in this case.

Rather, the defendant suggests that a collective question should be required upon a showing of something less than a

---

[8] Of course, questions related to race and ethnicity may be appropriate even in situations where there is no racial or ethnic difference between a defendant and a victim. For example, a defendant may be constitutionally entitled to a collective question, upon request, where such a question is "aimed at revealing racial bias or any similarly indurated and pervasive prejudice" (quotation and citation omitted). See Commonwealth v. Sheline, 391 Mass. 279, 289 (1984). See also Commonwealth v. McCowen, 458 Mass. 461, 493 n.34 (2010) ("unconscious racial bias is most effectively addressed by recognizing it and addressing it," including in "voir dire questions and jury instructions").

In Commonwealth v. Colon, 482 Mass. 162, (2019), which was decided after the trial in this case, we recognized the pervasiveness of ethnic, as well as racial, biases. Here, however, while defense counsel noted that the defendant was "Latino," he did not request a collective question regarding bias toward individuals of particular ethnic or racial backgrounds, but solely as to the use of an interpreter. The defendant does not argue that the two are equivalent.

substantial risk of extraneous influence.  He emphasizes that he requested collective questioning, as opposed to individual questioning, and contends that posing a "single collective question" would require relatively little additional time during empanelment.  See Lopes, 440 Mass. at 737.

General Laws c. 234A, § 67A, contains no requirement regarding voir dire on the use of interpreters, and we decline to read into the statute a new standard for mandatory collective questioning.  We understand the statute to require that, where a defendant demonstrates a substantial risk of an extraneous influence, a judge must include the subject of that extraneous influence within the questions posed to the venire, and must do so in the form of individual voir dire.  See Lopes, 440 Mass. at 737.  Where the subject of requested questioning is not enumerated in G. L. c. 234A, § 22, or G. L. c. 234A, § 67A, and where, as here, no substantial risk of extraneous influence has been shown, both the scope and form of such questioning are left to the sound discretion of the trial judge.  See Silva, 455 Mass. at 512-513; Lopes, supra at 737-738; Commonwealth v. Campbell, 378 Mass. 680, 695 (1979) (where there is no substantial risk, "a judge may propound voir dire questions collectively").[9]

---

[9] Had this case been tried in the Superior Court, we note that defense counsel could have posed such a question during

ii. Abuse of discretion. Where a requested question is not mandated by statute or constitutional requirements, a trial judge's decision not to ask the venire the question is reviewed for abuse of discretion. Lopes, 440 Mass. at 736. It is not an abuse of discretion "simply because a reviewing court would have reached a different result"; rather, an abuse of discretion occurs "where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). A judge need not probe into every conceivable bias imagined by counsel. "Absent some reason to suspect that jurors may be so prejudiced, . . . a

---

attorney-conducted voir dire. See G. L. c. 234A, § 67D, inserted by St. 2016, c. 36, § 4. Where attorney-conducted voir dire takes place, judges should approve questions designed to ascertain "preconceptions or biases relating to the identity of the parties . . . or issues expected to arise in the case," in order to ferret out "explicit and implicit bias." See Rule 6(1) and (3)(c) of the Superior Court Rules (2019). While not mandatory, attorney-conducted voir dire is permissible in the District Court, and judges have been encouraged to allow requests for the practice. Although "the empanelment process takes somewhat longer when attorneys participate in voir dire, the consensus is that [attorney participation in voir dire] has improved the process of jury selection. As a result, judges and attorneys should have greater confidence that the jurors who are ultimately empaneled are more likely to be impartial." See Commonwealth v. Dabney, 478 Mass. 839, 848, cert. denied, 139 S. Ct. 127 (2018), quoting Supreme Judicial Court Committee on Juror Voir Dire, Final Report to the Justices, at 5 (July 12, 2016).

judge is warranted in relying upon his [or her] final charge to the jury to purge any bias from the jurors prior to their deliberations." Commonwealth v. Estremera, 383 Mass. 382, 388 (1981).

In this case, it was evident at the outset that the jury would learn that the defendant did not speak English. Whether an interpreter sat near the defendant and whispered to him, or spoke to him remotely through headphones,[10] the jury likely would have been able to discern his use of interpretation throughout the trial. Had the interpreter needed to interrupt the proceedings to ask for a repetition or clarification, the defendant's use of an interpreter also would have become apparent.[11] Moreover, had the defendant wished to exercise his right to testify, it would have become evident that he spoke in Spanish.

The defendant notes on appeal that, in the court room, perception of an individual as a noncitizen -- whether correctly or incorrectly associated with the ability to speak English --

------

[10] On the record before us, there is not sufficient evidence to determine which method was employed in this case.

[11] The interpreters in this case in fact did interrupt the proceedings on several occasions (e.g., "I'm sorry. The interpreter said [the wrong name]"; "Your honor, may the interpreter have just one moment?"; "I'm sorry. The interpreter needs clarification").

can result in an increased likelihood that the individual will be found guilty, as well as the likelihood of a more severe sentence.[12]  See Espinoza, Willis-Esqueda, Toascano, & Coons, The Impact of Ethnicity, Immigration Status, and Socioeconomic Status on Juror Decision Making, 13 J. Ethnicity in Crim. Just. 197 (2015).  The amici also note that a defendant who testifies in Spanish may be perceived by non-Spanish speakers to be more guilty than one who testifies in English.  See Maeder & Yamamoto, Culture in the Courtroom:  Ethnocentrism and Juror Decision-Making, 10 PLoS ONE, no. 9, Sept. 2015, at 4, citing Stephan &  Stephan, Habla Ingles?  The Effects of Language Translation on Simulated Juror Decisions, 16 J. Applied Soc. Psychol. 577 (1986).

The record on appeal contains a significant number of studies that indicate disparities in rates of conviction and the severity of sentences imposed between defendants who used interpreters and those who did not.  Given these disparities, we recognize the importance, in appropriate circumstances, of

---

[12] The defendant also cites surveys showing that the overwhelming majority of Americans believe it is "essential" or "important" for immigrants living in the United States to learn and speak English, see, e.g., Most in U.S. Say It's Essential that Immigrants Learn English, Gallup News, Aug. 9, 2013, while a majority believe that English proficiency should be a requirement for an individual being allowed to remain in the United States.  See, e.g., Hispanics Support Requiring English Proficiency for Immigrants, Gallup News, July 5, 2007.

questioning the venire, at least collectively, concerning language-related bias. Nor is such questioning limited to situations where a defendant speaks Spanish. Our courts serve individuals who communicate in many diverse languages from all parts of the world. See, e.g., Commonwealth v. Jules, 464 Mass. 478, 487 (2013) (Haitian Creole); Adoption of Roni, 56 Mass. App. Ct. 52, 55 & n.6 (2002) (Mandarin Chinese). Whether an individual requires the use of interpretation from Arabic, Vietnamese, or any other language, there is potential for preconceived notions among jurors with respect to an inability to speak English.

The determination we must make, however, is not whether, sitting in review after the fact, we have reason to believe that prospective jurors might harbor biases toward non-English-speaking defendants, but, rather, whether the trial judge had reason to believe that they did. In requesting that a question be posed to the venire, the burden is on the defendant to "fully inform the judge of the basis for the request." Commonwealth v. LaFaille, 430 Mass. 44, 51 (1999). See Estremera, 383 Mass. at 388. The surveys and studies that the defendant proffers on appeal were not before the trial judge. Nor did the defendant draw the judge's attention to any cases that recognized language-related bias. See, e.g., Hernandez v. New York, 500 U.S. 352, 371 (1991) (observing that language elicits range of

reactions, from "admiration and respect, to distance and alienation, to ridicule and scorn. Reactions of the latter type all too often result from or initiate racial hostility"). Rather, counsel relied on her assertion that "[t]here's a lot of people that believe that if you're in this country and you don't speak English, that you've done something wrong, period."[13] A defendant's "bare allegation" that there exists a "widespread belief" that could result in bias is not sufficient to cause us to conclude that the judge abused his discretion by declining to conduct voir dire on the issue. See Commonwealth v. Sheline, 391 Mass. 279, 290-291 (1984) (no abuse of discretion where judge declined to pose requested questions regarding propensity to believe police witnesses). Cf. Toney v. Zarynoff's, Inc., 52 Mass. App. Ct. 554, 561 (2001).

Moreover, defense counsel's argument was intertwined with arguments about racial and ethnic differences, which tended to detract from the specific language-related concern. The judge attempted to discern whether the defendant and the victim were of different races or ethnicities, and the prosecutor responded that they were not. These were reasonable considerations with

---

[13] "The ultimate decision as to whether the question should be asked lies within the judge's sound discretion, but the judge must be assisted in this decision by the party seeking the inquiry." See Toney v. Zarynoff's, Inc., 52 Mass. App. Ct. 554, 561 (2001).

respect to the individual voir dire determination required by
G. L. c. 234A, § 67A.  On the limited information presented to
the trial judge, therefore, we discern no abuse of discretion in
his decision not to pose the requested question on the use of
interpreters.

That being said, we note the long-standing recommendation
that, "[w]hen an interpreter for a witness or party is
necessary, the judge should describe the role of the interpreter
for the jury.  This includes a brief statement of the underlying
need for the interpreter's service . . . ."[14]  See P.M. Lauriat &
D.H. Wilkins, Massachusetts Jury Trial Benchbook § 3.1.1.5, at
81 (3d ed. 2016).  See also P.M. Lauriat, Massachusetts Jury
Trial Benchbook § 3.1.4, at 65-66 (2d ed. 2004); P.M. Lauriat &
T.L. Pomeroy, Massachusetts Jury Trial Benchbook § 3.1.4, at 41-
42 (1996).  Subsequent questions regarding "any bias or

---

[14] General Laws c. 221, § 92, provides that "[t]he justices
of the Superior Court may appoint such official interpreters as
they may deem necessary for the sessions of the court."  Rule 41
of the Massachusetts Rules of Criminal Procedure, 378 Mass. 918
(1979), states that a "judge may appoint an interpreter or
expert if justice so requires."  While the question has not been
squarely presented to the United States Supreme Court, Federal
Courts of Appeals have concluded that the rights of a defendant
to be present at trial, to consult meaningfully with counsel,
and to confront adverse witnesses "mandate that an interpreter
be available to the defendant or witness who cannot effectively
communicate."  See Reporter's Notes to Mass. R. Crim. P. 41,
Massachusetts Rules of Court, at 222 (Thomson Reuters 2019),
citing United States ex rel. Negron v. New York, 434 F.2d 386
(2d Cir. 1970), and cases cited.

prejudice" and "any reason why [prospective jurors] would not be impartial" thereafter could help to unearth bias against non-English speakers.[15]  Cf. Commonwealth v. Lao, 443 Mass. 770, 775-776 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011) (no error where individual question regarding experience with domestic abuse was denied, but judge "agreed to make clear the nature of the charge against the defendant and to specify that if any jurors were uncertain about their ability to be fair and impartial, they should speak with the judge at sidebar"); Lopes, 440 Mass. at 738 (no error where collective question regarding experience with crime was denied, but "panel was sufficiently advised as to the nature of the case and the charge against the defendant" and asked if they could be impartial).[16]

---

[15] See, e.g., Colon, 482 Mass. at    n.16 (following affirmative response to collective question regarding general bias, juror was removed for stating, "Does [the defendant] not understand English? . . .  [H]e's an American citizen, and he can't understand and speak English, so that's why I've formed an opinion [about his culpability]").

[16] At argument before us, the Commonwealth maintained that, by the time the judge made a general inquiry as to whether any member of the venire harbored any general biases, it should have been evident to them that the defendant was using an interpreter.  We cannot say that this was so in the brief time that elapsed between the venire being sworn and the judge inquiring as to their ability to be impartial.  Among other things, the interpreter does not appear to have been introduced. Nor is there evidence that indicates whether the defendant was wearing a listening device at that point or that the significance of such a device was explained to the venire.

Given this, where the fact of a defendant's inability to speak English is reasonably likely to become known to the jury, we urge the trial judge to inquire, upon the request of the defendant,[17] whether any prospective juror harbors bias toward non-English speakers. "[A]s a practical matter, when a motion that prospective jurors be interrogated as to possible prejudice is presented, we believe the trial judge should grant that motion." Commonwealth v. Lumley, 367 Mass. 213, 216 (1975). Doing so is consistent with the trial judge's duty, under G. L. c. 234A, § 67A, to learn whether any juror "is sensible of any bias or prejudice." Such a question may be posed through individual voir dire, collective voir dire, or a written questionnaire. See Silva, 455 Mass. at 513 (no error where individual questions were denied but written questionnaire "covered much of what the defendant had sought"); Lopes, 440 Mass. at 735, 737-738 (no error where collective question was denied but subject was included on written questionnaire). See also Commonwealth v. Carvalho, 88 Mass. App. Ct. 840, 844-845 (2016). While posing a question on possible language bias may,

---

[17] In calling attention to his or her inability to speak English, a defendant "runs the risk" of "activat[ing] latent . . . bias in certain prospective jurors . . . . However, the opposite choice is not without risk" (quotation and citation omitted). Cf. Commonwealth v. Prunty, 462 Mass. 295, 314 (2012) (defendant controls whether to request individual voir dire on racial issues).

in some cases, increase the time required to seat a jury, "it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred.  No surer way could be devised to bring the processes of justice into disrepute" (citation omitted).  See Rosales-Lopez v. United States, 451 U.S. 182, 191 (1981).  See also Lopes, 440 Mass. at 737 ("We do not consider the time it might take particularly to inquire further to assess bias on the part of prospective jurors who respond positively as persuasive justification to forgo the practice").

b.  Testimony of DCF investigator.  The defendant maintains that a portion of the DCF investigator's testimony was substantially more prejudicial than probative, and should not have been admitted.  Over the defendant's objection, the investigator was permitted to testify that he "talked to a lot of individuals, people who are part of the family, people who are involved in the allegation, and people who are working professionally with the minor in question."  He also explained that he spoke to the defendant, and proceeded to recount the defendant's statements.

Testimony detailing an investigation "generally is not allowed unless it is from the first complaint witness or in response to a defense theory."  Commonwealth v. McCoy, 456 Mass.

838, 847 (2010). "The fact that the Commonwealth brought its resources to bear on this incident creates the imprimatur of official belief in the complainant." Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008). Where evidence of an investigation "has no relevance to whether the defendant in fact committed the acts charged," its probative value is substantially outweighed by the extreme risk of prejudice. See id.

Here, however, the fact of the investigation had relevance in providing a foundation for the admission of the defendant's statements to the investigator. Cf. McCoy, 456 Mass. at 847 (testimony detailing investigation permitted as foundation for admission of physical evidence collected during investigation). Although the jury learned that the Commonwealth had investigated the case, we cannot say that the effect thereof substantially outweighed the probative value in laying a foundation for the defendant's subsequent statements to the investigator. See Mass. G. Evid. § 403 (2019).

It was not necessary, however, for the investigator to describe the various parties to whom he spoke, apart from the defendant. The defendant contends that, by testifying that he spoke to "a lot of individuals," including "people who are working professionally with the minor," the investigator created the impression that other people, who would not be testifying in

court, including medical "professional[s]," had taken the
victim's allegations seriously.

Because the issue was properly preserved,[18] we review to
ensure that, if there were error, "the error[] did not influence
the jury or had but very slight effect" (citation omitted).  See
Commonwealth v. Mayotte, 475 Mass. 254, 261 (2016).  We conclude
that, even if this testimony was admitted erroneously, there was
no prejudice warranting a new trial.

The investigator mentioned other "professional[s]" only
once, and did not elaborate.  Nor did the investigator convey
that these professionals had heard the allegations, or had
believed them.  Moreover, the singular reference to

---

[18] The Commonwealth argues that this claim is not preserved,
because defense counsel objected to "relevanc[e]," but not
"prejudice."  At the outset, we note that the two determinations
often go hand in hand.  See Commonwealth v. Bin, 480
Mass. 665, 678 (2018) ("Even where evidence may be relevant and
otherwise admissible, a trial judge has discretion to exclude it
if its probative value is substantially outweighed by the risk
of confusion").  See also Mass. G. Evid. § 403 (2019).  Here,
counsel had previously moved in limine to exclude "a description
of the investigative process, which is irrelevant to guilt and
unfairly prejudicial."  See Commonwealth v. Grady, 474 Mass.
715, 719 (2016) (objection at motion in limine stage preserves
appellate rights "if what is objectionable at trial was
specifically the subject of the motion in limine").  Although
the word "prejudicial" was not used in making the objection
during trial, "[p]erfection is not the standard by which we
measure the adequacy of an objection."  Commonwealth v.
McDonagh, 480 Mass. 131, 138 (2018).  This is all the more true
where, as here, the judge did not permit counsel to complete her
explanation.  See id. at 139 (grounds imperfectly explained
"perhaps because the judge interrupted counsel in the midst of
the objection").

"individuals" and "professional[s]" played little role in the Commonwealth's case. The prosecutor asked no follow-up questions, and made no mention of the testimony during closing argument. Thus, we are confident that the effect of the testimony, if any, was "very slight" (citation omitted). See Mayotte, 475 Mass. at 261.

c. Testimony of victim's father. The defendant argues that the victim's father, who was the first complaint witness, see Commonwealth v. King, 445 Mass. 217, 246 (2005), cert. denied, 546 U.S. 1216 (2006), improperly bolstered her credibility. He testified that, upon collecting the victim from the defendant's apartment, she was "nervous," and that

"I knew there was something wrong because I know her. . . . I know her. I know when she is worried and I know when she is not worried."

In closing, the Commonwealth relied on the father's testimony; the prosecutor argued,

"A father knows his daughter. He stood there and testified to you, she's my daughter, I know her. When he picked her up at the house that night, he knew immediately something was wrong."

Because the defendant did not object either to the witness's testimony or to the closing argument, we review to determine whether the testimony and argument were improper and, if so, whether they created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

We first announced the doctrine of first complaint under our superintendence power to regulate the presentation of evidence in court proceedings. A first complaint witness "may not testify to belief in the witness's truthfulness or otherwise supplant the fact finder's function in determining credibility." King, 445 Mass. at 246 & n.26. Such a witness may, however, testify as to the "circumstances surrounding the initial complaint." Id. at 246.

> "By 'circumstances,' we mean that the witness may testify to his or her observations of the complainant during the complaint; the events or conversations that culminated in the complaint; the timing of the complaint; and other relevant conditions that might help a jury assess the veracity of the complainant's allegations or assess the specific defense theories as to why the complainant is making a false allegation."

Id. Moreover, evidence of the demeanor of a complainant at or around the time of the incident is permissible to rebut a claim of fabrication. See Commonwealth v. Santos, 465 Mass. 689, 699-700 (2013) (parent permitted to testify that child victim was "pale," "clammy," "like he had seen a ghost," and that this was "unusual" for him); Commonwealth v. Arana, 453 Mass. 214, 221, 225-226 (2009) (parent permitted to testify that child victim was "upset," "crying," "sad," and "need[ing] help").

The defense at trial was that the victim fabricated the allegations, perhaps in order to avoid having to be cared for by Concepcion. The victim's father testified that, before he

talked to his daughter, he observed "something was wrong," and believed that she appeared "nervous" and "worried."[19]  Such testimony is not a reflection whether he believed her subsequent statements but, rather, a description of how she appeared prior to making those statements, close in time to the assault.  That the jury might use this description to corroborate the timeline of the victim's allegations is not the same as her father substituting his credibility determination for that of the fact finder.[20]

---

[19] This testimony may have constituted a lay opinion.  Lay opinion testimony is admissible only if it is "(a) rationally based on the witness's perception; (b) helpful to a clear understanding of the witness's testimony or in determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge."  See Mass. G. Evid. § 701 (2019).  To the extent that the victim's father's testimony might not have been "based on [his own] perception," or that he lacked personal knowledge, the defendant does not raise the issue before us, nor was it raised at trial.  See Commonwealth v. Millyan, 399 Mass. 171, 183 (1987) ("The general rule is that a witness may testify only to facts that he observed and may not give an opinion on those facts"); Commonwealth v. Carver, 33 Mass. App. Ct. 378, 383 (1992) (witnesses not permitted to offer "mere opinion or speculation as to another person's state of mind").  See also H.P. Carroll & W.C. Flanagan, Trial Practice § 13:61, at 592 n.34 (3d ed. 2017), quoting Mauet & Wolfson, Trial Evidence § 4.7 (4th ed. 2009) ("non-expert witnesses generally cannot testify to what someone else thinks, feels, or intends").  Contrast Commonwealth v. Santos, 465 Mass. 689, 700 (2013) (parent described child's physical appearance).

[20] By contrast, had the victim's father testified that, upon hearing the allegations, he believed her, that testimony would have been impermissible.

There was no error in allowing the admission of this testimony.  Accordingly, the Commonwealth was permitted to rely on it during closing argument.  See Commonwealth v. Andrade, 468 Mass. 543, 552 (2014) ("Arguments based on testimony submitted at trial . . . are proper"); Commonwealth v. Kebreau, 454 Mass. 287, 304 (2009) (prosecutor permitted to "argue strenuously from the evidence that the Commonwealth's witnesses were credible").[21]

d.  Jury instructions.  The judge denied the defendant's request to limit or substitute the standard instruction concerning first complaint testimony.  On appeal, the defendant contends that providing the standard instruction was error.  The portion of the instruction, first defined in King, 445 Mass. at 247-248, that the defendant sought to exclude provides:

> "The length of time between the alleged crime and the report of the complainant to this witness is one factor you may consider in evaluating the complainant's testimony, but you may also consider that sexual assault complainants may delay reporting the crime for a variety of reasons."

---

[21] The victim's father also testified that he told his sister "what had happened."  We agree with the defendant that the statement should not have been admitted.  Willingness to tell another individual about an allegation implies a belief in the allegation.  We do not, however, consider the issue preserved.  Although counsel initially objected to the line of questioning, no grounds were stated, and the judge reasonably could have understood the objection as being to hearsay.  When the question was rephrased ("Without saying what you said or what they said back to you, who did you tell?"), defense counsel made no further objection.  The single admission, "I told my sister," does not, in the circumstances of this case, generate a substantial risk of a miscarriage of justice.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

Id. at 248.

The defendant argues that, in this case, the instruction was unnecessary, and, worse, prejudicial. Delay was not at issue; the victim reported the incident to her father shortly after arriving home. The defendant argues, essentially, that the instruction drew the jury's attention to the possibility that the victim could have "delay[ed] reporting the crime," but did not, thereby injecting delay as an issue and bolstering her credibility.

In King, 445 Mass. at 242, we recognized that "victims often do not promptly report a sexual assault for a variety of reasons that have nothing to do with the validity of the claim of assault." We sought to disabuse the jury of the misapprehensions that "'real' victims will promptly disclose a sexual attack" and that "the absence of a timely complaint suggests fabrication." See id. at 238, 240. Nonetheless, we determined that "the timing of a complaint is [still] . . . one factor the jury may consider in weighing the complainant's testimony." See id. at 242. It was not improper, therefore, for the jury to be instructed that they could consider a delay, or lack thereof.

Moreover, some jurors may have perceived a delay, albeit a short one, in this case. The victim did not report the allegations immediately; she waited until after her father's

boss had left her and her father at their apartment.  The jury were permitted to consider this evidence, and the instruction appropriately contextualized the passage of time between the incident and the report.  We discern no error in the judge's decision to instruct using the standard instruction set forth in King, 445 Mass. at 247-248.

Judgment affirmed.