SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. TERRANCE MONTGOMERY

 
 Docket:
 SJC-13594
 
 
 Dates:
 October 11, 2024 - January 17, 2025
 
 
 Present:
 (Sitting at Northampton): Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Homicide. Jury and Jurors. Constitutional Law, Jury, Impartial tribunal. Practice, Criminal, Jury and jurors, Voir dire, Examination of jurors, Failure to object.
 
 

      Indictment found and returned in the Superior Court Department on June 29, 2018.
     The case was tried before Mark D. Mason, J., and a motion for a new trial was heard by him.
     After review by the Appeals Court, 103 Mass. App. Ct. 1118 (2024), the Supreme Judicial Court granted leave to obtain further appellate review.
     Mark H. Bluver (Ruth Greenberg also present) for the defendant.
     David L. Sheppard-Brick, Assistant District Attorney, for the Commonwealth.
     Elizabeth Billowitz, Bradley Baranowski, Katharine Naples-Mitchell, Claudia Leis Bolgen, & Radha Natarajan, for the Committee for Public Counsel Services & others, amici curiae, submitted a brief.
     DEWAR, J.  A jury convicted the defendant, Terrance Montgomery, of murder in the second degree for the killing of Paul Finegan.  The defendant argues that his conviction must be vacated because of a question asked during attorney-conducted voir dire in the course of jury empanelment.  The prosecutor asked each prospective juror some variation on the question whether he or she "could convict" the defendant on the basis of eyewitness testimony, without fingerprint or deoxyribonucleic acid (DNA) evidence.  The defendant did not object to the voir dire question, nor to the trial judge's excusing for cause twelve prospective jurors based on their respective answers to the question.  
     The defendant filed a motion for a new trial, arguing, among other claims, that this voir dire question systematically removed prospective jurors inclined to be skeptical of eyewitness testimony, "primed" the seated jurors to convict him based on the evidence to be presented at trial, and thus deprived him of an impartial jury in violation of the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.  The trial judge denied the defendant's motion.  With respect to this claim, the judge concluded that, even if the unobjected-to voir dire question was improper, the defendant had failed to demonstrate that any such error created a substantial risk of a miscarriage of justice warranting a new trial.  
     We conclude that, while the prosecutor's voir dire question was improper, the trial judge did not abuse his discretion in denying the defendant's motion for a new trial on this ground.  We reaffirm that it is improper for a prosecutor to ask prospective jurors if they could "convict" a defendant based on hypothetical circumstances related to the case, as occurred here.  For the reasons that follow, however, this unpreserved error did not create a substantial risk of a miscarriage of justice in this case.  We therefore affirm the defendant's conviction of murder in the second degree and the order denying his motion for a new trial.[1]
     1.  Background.  a.  Evidence at trial.  We summarize the facts that the jury could have found, reserving certain details for our discussion of the issues.  
     The victim was killed at a backyard birthday party for the defendant's nephew in Springfield on the evening of May 5, 2018.  The host of the party was the nephew's mother.  The nephew's father was the defendant's brother, who had been killed approximately six or seven weeks earlier.  The victim was a friend of the host and came to the party uninvited.
     The defendant was driven to the party by an acquaintance who had been a friend of the defendant's late brother.  They stopped along the way to pick up other family members of the defendant.  Upon arriving, the defendant proceeded to the backyard, where music was playing, a bounce house had been set up for the children, and a crowd of at least forty to fifty people had gathered.
     The victim was in the backyard, speaking on his cellular telephone while standing next to a friend, when he noticed the defendant's arrival and became upset.  The victim ceased his telephone conversation, walked over to the defendant, said "let me holla at you for a minute," and insulted the defendant using profanity and a racial slur.  The victim and the defendant then proceeded to have a conversation.  Amidst the din of the party, it was difficult for other guests to hear what the two were saying to each other, but the conversation appeared to be an argument.  Eventually, the victim turned to walk away from the defendant; the defendant said "one more thing"; the victim turned back to face the defendant; and the defendant then shot the victim in the head with what appeared to be a silver and black .40 caliber gun.  The bullet entered the left side of the victim's head, fracturing his jaw and spine.  Later, the Springfield police recovered one discharged .40 caliber shell casing from the backyard.  The victim was unarmed. 
     After shooting the victim, the defendant ran out of the party.  As he left, he said, "Fuck Swag Gang."  Swag Gang was a reference to the victim and his friends.  
     Other people at the party also ran out of the backyard after the shooting.  Only three or four minutes had passed since the defendant's arrival at the party, and the acquaintance who had driven him there heard the gunshot from the side of the house; she had not yet made it to the backyard.  She ran back to her car, and the defendant and his family members joined her there.  They were all scared and quiet as she drove them home.[2]
     The defendant did not testify at trial.  He presented one witness, a neighbor who did not attend the party and testified that, even prior to the shooting, she had already spoken with police during the party about a parking issue; after she heard the gunshot, she went to her porch, where her husband began filming people running from the scene using his cellular telephone; the two were then accosted by a group of people including the party's host, who took the husband's telephone and their car and house keys; and the neighbor later pressed charges against the host and others based on the incident.  The principal theory of the defense, presented through cross-examination of the Commonwealth's witnesses, was that the Commonwealth's eyewitnesses were not telling the truth; rather, they had been pressured into telling police "what they wanted to hear," and two of the witnesses were testifying pursuant to cooperation agreements and seeking to obtain favorable disposition of pending criminal charges against them.  The defendant also briefly noted in his closing argument that the Commonwealth had not presented any forensic evidence linking him to the crime. 
     b.  Jury voir dire.  Before trial, the prosecutor moved in limine to ask prospective jurors, among other questions, "Is there anyone who would have difficulty convicting someone of a crime without forensic [evidence] such as DNA [or] fingerprints?" and "Could you find someone guilty of a crime based solely upon witness testimony?"  The trial judge allowed the prosecutor's requests, after ascertaining that defense counsel had no objection to either question.    
     At trial, during the attorney-led voir dire of each prospective juror at sidebar, the prosecutor asked each juror a variation of the question:
"[D]o you think you would have a problem convicting somebody of a serious crime without forensic evidence or scientific evidence like DNA or fingerprints?"
After the first juror commented that this question was "a tough one" and that the juror "would need beyond a reasonable doubt with some compelling evidence" in order to "convict someone of first degree murder," the judge began to respond that it was anticipated that the Commonwealth would introduce eyewitness testimony.  The juror then interrupted to say "that could be compelling evidence."  After the first juror was seated, the trial judge instructed the prosecutor to allude to the anticipated eyewitness testimony when questioning subsequent prospective jurors, because "[o]therwise it sounds like there's no evidence."  The prosecutor thereafter incorporated a reference to the anticipated existence of eyewitness testimony when questioning the remaining jurors.  The defendant never objected to any form of the question.  
     The trial judge struck twelve jurors for cause based on their responses to these questions, all without objection from the defendant.  The struck jurors either unequivocally stated that they thought they would require forensic evidence to convict a defendant or expressed doubt about their ability to convict without such evidence.  For example, the prosecutor asked excused juror no. 64, "[W]ould you have a problem convicting somebody of a serious crime based on just eyewitness testimony if there is no forensic evidence, like DNA or fingerprints?"  The juror responded, "Yeah.  Kinda. . . .  Eyewitness, some kind of hard evidence. . . .  I guess if the testimonies were believable enough."  The prosecutor then asked, "But if you found the witnesses credible, would you still want DNA evidence or fingerprint evidence in order to convict of a serious crime?"  The juror responded, "Yeah.  I might."  
     The sixteen seated jurors all either unequivocally denied having doubt about their ability to convict a defendant without forensic evidence or gave a qualified answer that they could convict without forensic evidence if the evidence presented at trial were sufficiently "compelling," "credible," or "believable."  
     c.  Procedural history.  At trial on an indictment against the defendant for murder in the first degree, the jury found the defendant guilty of murder in the second degree.[3]  The judge sentenced the defendant to life in prison with the possibility of parole after twenty-five years.  The defendant appealed.  The Appeals Court stayed the appeal so the defendant could file a motion for a new trial.  The defendant sought a new trial on multiple grounds, including a claim that his counsel's failure to object to the voir dire question about forensic evidence deprived the defendant of his right to effective assistance of counsel.  The trial judge denied the defendant's motion after an evidentiary hearing, and the defendant appealed.  The Appeals Court consolidated that appeal with the defendant's direct appeal and then affirmed both his conviction of murder in the second degree and the denial of his motion for a new trial.  See Commonwealth v. Montgomery, 103 Mass. App. Ct. 1118 (2024).  We granted the defendant's application for further appellate review, limited to the defendant's claim regarding the voir dire question. 
     2.  Discussion.  The defendant contends that the trial judge abused his discretion by permitting the prosecutor to question members of the jury venire about whether they would be able to "convict" a defendant without forensic evidence such as fingerprint or DNA evidence and then excusing for cause jurors who expressed doubt about their ability to convict in the absence of such evidence.  The defendant claims that the use of this voir dire question deprived him of his right to a fair trial by an impartial jury under the Sixth Amendment and art. 12.[4]    
     Because the defendant did not preserve this issue at trial, we review to determine whether any error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Perez, 460 Mass. 683, 689-690 (2011).  That standard also applies to an underlying unpreserved claim of error first raised in a motion for a new trial claiming ineffective assistance of counsel for counsel's failure to object.  See Commonwealth v. Bly, 444 Mass. 640, 648-652 (2005); Commonwealth v. Azar, 435 Mass. 675, 686 (2002), S.C., 444 Mass. 72 (2005).  In reviewing the trial judge's denial of the defendant's motion for a new trial, we are mindful that a motion judge who was also the trial judge uses his knowledge of what occurred at trial in assessing the motion and the effects of any alleged error, see Commonwealth v. Grace, 370 Mass. 746, 752-753 (1976), and we "give the motion judge's determination added deference," Commonwealth v. Amirault, 424 Mass. 618, 646 (1997), S.C., 430 Mass. 169 (1999).  We review the decision whether to grant a defendant a new trial for abuse of discretion or other error of law and will not reverse the decision unless manifestly unjust.  See Commonwealth v. Diaz Perez, 484 Mass. 69, 73 (2020).
     The Sixth and Fourteenth Amendments and art. 12 guarantee the right of a criminal defendant to a trial by an impartial jury.  See Commonwealth v. Espinal, 482 Mass. 190, 194 (2019).  "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors."  Id., quoting Commonwealth v. Dabney, 478 Mass. 839, 848 (2018).  See G. L. c. 234A, § 67A (voir dire is designed "to learn whether the juror [is] related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice"). 
     The scope of voir dire is left to "the sound discretion of the trial judge."  Commonwealth v. Gray, 465 Mass. 330, 338 (2013), quoting Perez, 460 Mass. at 689.  Aside from certain categories of mandatory questions, see Espinal, 482 Mass. at 195-196, "[a] judge has broad discretion as to the questions to be asked," id. at 195, quoting Commonwealth v. Sanders, 383 Mass. 637, 641 (1981).  "A trial judge, who is aware of the facts of a particular case and can observe firsthand the demeanor of each prospective juror, is in the best position to determine what questions are necessary reasonably to ensure that a particular jury can weigh and view the evidence impartially."  Espinal, supra, quoting Commonwealth v. Lopes, 440 Mass. 731, 736 (2004).  "[A]n otherwise qualified prospective juror should be excused for cause only if, given his or her experiences and resulting beliefs, the judge concludes that the prospective juror is unable to fairly evaluate the evidence presented and properly apply the law."  Commonwealth v. Williams, 481 Mass. 443, 452 (2019).   
     As part of voir dire, attorneys and self-represented litigants in the Superior Court now have a statutory right to question potential jurors.  See generally Dabney, 478 Mass. at 848-849 (discussing G. L. c. 234A, § 67A).  Trial judges retain broad discretion over the scope of such questioning, however, including over the specific language used to pose questions.  See Dabney, supra at 850, citing Addendum A(1) to the Rules of the Superior Court.  Superior Court Rule 6 provides judges with guidance in exercising this discretion.  See Dabney, supra.  
     In his thoughtful and thorough ruling on the motion for a new trial, the trial judge concluded that the defendant "raised a legitimate, serious concern" about the prosecutor's unobjected-to voir dire question regarding forensic evidence and went on to consider whether, if error occurred, the error created a substantial risk of a miscarriage of justice.  We agree with the trial judge's analysis of the voir dire question and conclude that it was error to permit the prosecutor to ask it, regardless of the absence of an objection.
     The voir dire question sought to unearth bias due to the so-called "CSI effect," a theory that jurors may be predisposed to hold the government to an excessively high evidentiary burden and "will either acquit unjustly or fail to follow a judge's instructions if forensic evidence is not offered as part of the government's case."  Perez, 460 Mass. at 689.  We have previously noted that "the theory that jurors who watch forensic science television programs like 'CSI' will hold prosecutors to an unreasonably high standard of proof because of the prowess displayed by fictional forensic scientists . . . may be largely speculative."  Commonwealth v. Vuthy Seng, 456 Mass. 490, 503-504 (2010).[5]  
     We have nonetheless repeatedly recognized a judge's discretion to permit carefully bounded inquiry into this area of potential juror bias.  See Gray, 465 Mass. at 338-339; Perez, 460 Mass. at 691.  Judges exercising this discretion must consider the risk of prejudice to a defense based on a lack of forensic evidence against the defendant.  Gray, supra, citing Perez, supra at 691 n.13, and Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980).  See also Espinal, 482 Mass. at 198 ("A judge need not probe into every conceivable bias imagined by counsel"); Commonwealth v. Estremera, 383 Mass. 382, 388 (1981) ("Absent some reason to suspect that jurors may be so prejudiced, . . . a judge is warranted in relying upon his final charge to the jury to purge any bias from the jurors prior to their deliberations").  And a voir dire question "may not be introduced if it 'commit[s] the jury to a verdict in advance' or '[has] the effect of identifying and selecting jurors . . . predisposed to convicting the defendant based on evidence the Commonwealth [will] present."  Commonwealth v. Brown, 477 Mass. 805, 821 (2017), cert. denied, 586 U.S. 826 (2018), quoting Gray, supra at 339, quoting Perez, supra at 691.  Accordingly, "such questions should be posed sparingly," Gray, supra, and with "great care . . . in phrasing the question," id. at 340 n.10.  
     The prosecutor's voir dire question at the defendant's trial was not phrased with the care we require.  As described above, the prosecutor asked all the prospective jurors some variation on the question whether they "would have a problem convicting somebody of a serious crime without forensic evidence or scientific evidence like DNA or fingerprints," and, after the judge's intervention during the questioning of the first juror, the prosecutor incorporated into the question the circumstance that the evidence would consist of eyewitness testimony.  Albeit posed hypothetically, this question inherently sought to "commit" prospective jurors in advance to convicting the defendant despite the absence of forensic evidence.  See Gray, 465 Mass. at 339, quoting Perez, 460 Mass. at 691.  Moreover, we agree with the defendant that the added reference to eyewitness testimony against the hypothetical defendant exacerbated the question's impropriety by making the hypothetical question more specific to the circumstances of the defendant's case; the augmented question inherently sought to commit prospective jurors to convict the defendant on the basis of the very form of evidence the Commonwealth would present.  Meanwhile, the voir dire question was not framed to address the germane issue, the juror's willingness and ability "to fairly evaluate the evidence presented and properly apply the law."  Williams, 481 Mass. at 452.  
     In these respects, the voir dire questioning by the prosecutor differed from other "CSI effect" questions we have previously held proper.  In Perez, 460 Mass. at 689, the judge asked jurors whether they believed "the Commonwealth is never able to prove a case beyond a reasonable doubt unless it presents scientific evidence to corroborate witness testimony."  As we later observed, this question "suggested . . . that such an extreme position would be incorrect, while reminding jurors that the burden of proof is on the Commonwealth."  Gray, 465 Mass. at 340 n.10, citing Perez, supra.  And in Gray, supra at 337, the prospective jurors were asked whether "the absence of DNA or fingerprint evidence [would] prevent [them] from fairly evaluating the evidence."  See also, e.g., Commonwealth v. Young, 73 Mass. App. Ct. 479, 485 (2009) (discerning no abuse of discretion in question whether, "if the Commonwealth presented only testimony of witnesses, and presented no corroborating scientific evidence," jurors "would . . . automatically find the defendant not guilty, or . . . make an independent assessment of the evidence").  Unlike the questioning here, these questions were "tailored to ensure that seated jurors were capable of deciding the case without bias and based on the evidence," without seeking to "commit the jury to a verdict in advance."  Perez, supra at 691.
     We note, further, that the prosecutor's questions also ran afoul of the guidance set forth in Superior Court Rule 6 regarding attorney-led juror voir dire.  Among other parameters, that rule bars questions that are "framed in terms of how the juror would decide this case (prejudgment), including hypotheticals that are close/specific to the facts of this case" or that "seek to commit juror(s) to a result, including . . . questions about what evidence would cause the juror(s) to find for the attorney's client or the party."  Dabney, 478 Mass. at 849, quoting Rule 6(3)(e) of the Rules of the Superior Court.  As discussed above, the prosecutor's questioning did pose such a hypothetical question specific to the circumstances of this case, seeking to commit the jurors to "convict" without forensic evidence and instead on the basis of eyewitness testimony.
     Based on the impropriety of the prosecutor's voir dire questioning here, the defendant asks this court to prescribe a uniform "CSI effect" question for use at future trials or, alternatively, to prohibit such questions altogether.  We decline to prescribe a uniform question, both because we entrust juror voir to trial judges' sound discretion exercised in the particular circumstances of each case, see Dabney, 478 Mass. at 848-850, and because we continue to believe that trial judges should permit such questions only sparingly, see Gray, 465 Mass. at 339; Perez, 460 Mass. at 691 n.13.  The defendant has not, however, provided us with sufficient grounds for imposing a new categorical bar on voir dire questioning in this area of potential juror bias, and we decline to reconsider our past precedents permitting such inquiries in at least some circumstances if phrased with sufficient care.  See Johnson v. Settino, 495 Mass. 42, 50-51 (2024) (discussing stare decisis considerations).     
     Having concluded there was an error in the conduct of attorney-led voir dire at the defendant's trial, we must decide whether his conviction must be vacated and a new trial ordered because this unpreserved error poses a substantial risk of a miscarriage of justice.  See Azar, 435 Mass. at 686.  This standard "requires us to determine 'if we have a serious doubt whether the result of the trial might have been different had the error not been made.'"  Id. at 687, quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).  We "review the evidence and the case as a whole" and "consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision."  Azar, supra.  
     We conclude that the error during juror voir dire did not create a substantial risk of a miscarriage of justice in the circumstances of this case.  In denying the defendant's motion for a new trial, the trial judge described the Commonwealth's evidence at trial as "overwhelming," an assessment consistent with the record before us.  See Amirault, 424 Mass. at 646 (noting deference due to motion judge who was also trial judge).  This evidence included the testimony of eyewitnesses, including the woman with whom the victim was standing when he first spotted the defendant and who watched from about ten feet away as the defendant and the victim argued, the victim began walking away before turning back, and the defendant then shot the victim; the host of the party, who knew both the defendant and the victim and who also watched as the two men argued, the victim began walking away before turning back, and the defendant then shot the victim; and a third woman at the party who saw the two men standing close together in conversation when the gunshot rang out and who told the grand jury that she saw the defendant shoot the victim in the head.  One of the women who saw the defendant shoot the victim further testified that the defendant's gun appeared to be a .40 caliber handgun, which matched the .40 caliber shell casing that police found in the backyard.  And the jury also heard the testimony of the driver who brought the defendant and his family members to and from the party in the minutes before and after the shooting and heard the gunshot in the interim.  The jury's verdict finding the defendant guilty of murder in the second degree thus had strong support in the evidence.  
     With respect to the nature of the error and its significance in the context of the case, the defendant offers two principal arguments:  that the improper question prejudiced him because he was pursuing a defense of inadequate police investigation under Bowden, 379 Mass. at 485-486, and that the question "slanted" the jury in the prosecutor's favor by removing jurors more likely to be skeptical of eyewitness testimony and "priming" the seated jurors to accept eyewitness testimony by suggesting that it would be improper for them not to "convict" on the basis of such testimony.  Accordingly, the defendant contends, we cannot in this case make our usual assumption that each wrongly excused juror "was replaced by another fair and impartial juror."  Williams, 481 Mass. at 455.[6]  
     The defendant overstates the significance of the error in the circumstances of this case.  First, although the defendant's closing argument briefly referenced "the complete lack of any forensic evidence tying" the defendant to the victim's death, the defendant did not develop an argument that any particular forensic testing should have been performed and admitted in evidence, and that the lack thereof raised a reasonable doubt about the defendant's guilt.  Cf. Bowden, 379 Mass. at 485-486.  Rather, his main argument to the jury was that the eyewitnesses' testimony was not credible.  In support, he drew on his extensive efforts to impeach each of the witnesses' testimony on various bases, including that their testimony was implausible because it was insufficiently detailed, was contradictory, and arose from a loud and crowded party; that the witnesses had been pressured by police "out to support their theory" against the defendant; that the witnesses were simply repeating rumors they had heard or "looking for someone to blame"; and, for two of the witnesses, that they were testifying pursuant to cooperation agreements and seeking to avoid incarceration for pending charges against them.  Thus, this was not a case where the defense hinged on convincing the jury that the Commonwealth should have, but did not, investigate and present forensic evidence. 
     The force of the defendant's second argument -- that the improper voir dire question "slanted" the composition of the jury in the prosecutor's favor by removing prospective jurors inclined to be skeptical of eyewitness testimony and "primed" the seated jurors to accept the prosecutor's evidence -- is diminished in the broader context of the empanelment and trial as a whole.[7]  The judge asked the prospective jurors both as a group and individually whether they could be fair and impartial, and each seated juror responded affirmatively.  The seated jurors repeatedly were instructed regarding the Commonwealth's burden of proof beyond a reasonable doubt, including during empanelment, at the outset of the trial, and in the jury instructions at the trial's conclusion.  And, with respect to eyewitness testimony in particular, the jury received an instruction pursuant to Commonwealth v. Gomes, 470 Mass. 352, 365-366 (2015), to provide them with guidance "to capably evaluate the accuracy of an eyewitness identification."  Nothing in the record of this case casts doubt on our usual assumption that the jury followed their instructions in ultimately convicting the defendant of murder in the second degree and acquitting him of murder in the first degree.  See Commonwealth v. Andrade, 468 Mass. 543, 549 (2014).  
     Moreover, the trial judge, in denying the defendant's motion for a new trial, concluded on the basis of his own observations that "all of the seated jurors in this case were impartial and were not predisposed to rendering a guilty verdict."  "We give deference to the judge's determination that the chosen jurors were fair and impartial."  Lopes, 440 Mass. at 738.  See Commonwealth v. Ascolillo, 405 Mass. 456, 459 (1989), quoting Commonwealth v. Lattimore, 396 Mass. 446, 449 (1985), S.C., 400 Mass. 1001 (1987) (trial judge's belief that jury consisted "of twelve open-minded, impartial persons" will be set aside "only where juror prejudice is manifest").  
     In sum, although there is no basis for concluding that counsel's failure to object to the prosecutor's improper voir dire question was a reasonable tactical decision,[8] we conclude, upon considering the record as a whole, that this error did not create a substantial risk of a miscarriage of justice.  We have no "serious doubt whether the result of the trial might have been different had the error not been made."  Azar, 435 Mass. at 687, quoting LeFave, 430 Mass. at 174.
     3.  Conclusion.  Although the prosecutor at the defendant's trial asked an improper question during empanelment of the jury -- whether the prospective jurors could "convict" a defendant based on the type of evidence to be presented at trial -- that unobjected-to error did not create a substantial risk of a miscarriage of justice in the circumstances of this case.  We therefore affirm the defendant's conviction of murder in the second degree and affirm the trial judge's order denying the defendant's motion for a new trial.
So ordered.
footnotes

     [1] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services, Massachusetts Association of Criminal Defense Lawyers, Criminal Justice Institute at Harvard Law School, and New England Innocence Project.
     [2] Although the driver initially testified that she could not remember whether the defendant said anything in the car ride after the shooting and then later denied that the defendant said anything at all, that testimony was impeached with a statement she made during a police interview.  She admitted in her testimony that she had told the police that, while the defendant was in her car on the ride back, he referred to the victim using a racial epithet and described him as "gone"; another passenger in the car asked, "Why did you do that?"; and the defendant responded, "I don't give a fuck."  The trial judge instructed the jury that the driver's testimony regarding what she had told the police was not to be used as evidence of the truth of what she had said to the police and could be relied on only insofar as it discredited her testimony that she did not recall any conversations in the car.  
     [3] The jury also found the defendant guilty on the two other indictments against him, for unlawful possession of a firearm and unlawful possession of a loaded firearm.  The Appeals Court vacated those convictions pursuant to Commonwealth v. Guardado 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024), and they are not before us.
     [4] Before this court, the defendant no longer presses his further claim, urged in the courts below, that his counsel's failure to object to the use of this question deprived him of his Federal and State constitutional rights to effective assistance of counsel.
     [5] See also Perez, 460 Mass. at 690 n.11 (discussing juror-survey studies showing "that modern juries do have high expectations that forensic evidence will be presented at trial, but that [1] these expectations are unrelated to watching television programs like CSI; and [2] while some of these expectations may play an indirect role in certain jury verdicts, there is no direct causative link between presentation of scientific evidence and convictions or acquittals of criminal defendants").
     [6] After oral argument, counsel for the defendant sought leave to file a two-page letter further elaborating on this argument in light of the discussion at oral argument.  The Commonwealth did not oppose the motion, and we grant it.  We note that, while such postargument filings are disfavored, the defendant's letter was accompanied by a motion and thus complied with Mass. R. A. P. 22 (c) (2), as appearing in 481 Mass. 1651 (2019) (providing that, after oral argument, "no brief, memorandum, or letter relating to the case, except a citation of supplemental authorities letter filed pursuant to Rule 16 [l], shall be submitted to the court, except to correct a factual misstatement during oral argument, or when such a writing was expressly allowed or requested by the court during the argument, or upon allowance of a motion to submit such a writing").  See also Mass. R. A. P. 16 (l), as appearing in 481 Mass. 1628 (2019) (permitting parties to bring "pertinent and significant" authorities to court's attention at any time, but "without argument").
     [7] We note that, while the defendant's argument in this regard relies heavily on the reversal of a defendant's conviction for a similar error in Charles v. Maryland, 414 Md. 726 (2010), the defendant in that case had objected to the improper question at trial.  See id. at 730.  Accordingly, the court's review in Charles was not confined to review for a substantial risk of a miscarriage of justice or other standard applicable to unpreserved claims of error.
     [8] At the evidentiary hearing on the defendant's motion for a new trial, trial counsel testified that he had not objected to the voir dire question because the objection had not occurred to him at the time, and that, going forward, he intended to object to similar such voir dire questions.